| 33 | 1 |
| 56 | 503 |

| 33 | 1 |
| 58 | 262 |
| 58 | 502 |

| 33 | 1 |
| 60 | 667 |
| 60 | 671 |

| 33 | 1 |
| 63 | 22 |

## CHARLESTOWN.

ARBENZ *v.* WHEELING & H. R. Co.

Submitted June 27, 1889.—Decided September 13, 1889.

1. RAILROAD COMPANIES—OCCUPATION OF STREET.

Under the provisions of our statute (Code 1887, c. 54, s. 50,) a railroad company with the assent of the municipal authorities may construct and operate its railroad along a public street of a city in a cut or excavation below the common level of the remaining portion of the street in such manner as will appropriate a portion of the street to the exclusive use of the railroad company, provided such excavation does not occupy the entire street unnecessarily, or such considerable portion thereof, as to substantially prevent the use of the street by the general public, and provided, further that it does not unnecessarily impair the usefulness of the street as a highway for the general public.

2. RAILROAD COMPANIES—INJUNCTION—DAMAGES.

The abutting lot-owners on the street so occupied by the railroad company, whether they own the fee in the ground covered by the street or not, will not be entitled to enjoin the railroad

company from making such excavation and constructing its road along the street in a careful and proper manner, unless the injury therefrom to the lot-owner will be such as will entirely destroy the value of his property and therefore be equivalent to a virtual taking of it by the railroad company. In the case at bar it is held, that there will be no such destruction of the value of the plaintiff's property as will entitle him to an injunction to restrain the railroad company from constructing its road until the damages are ascertained and paid, or secured to be paid.

*W. P. Hubbard* for appellant.

*H. M. Russell* for appellee.

SNYDER, PRESIDENT:

The Wheeling & Harrisburg Railway Company, a corporation chartered under the general railroad law of this State, by an ordinance adopted by the council of the city of Wheeling on January 18, 1889, obtained the consent of said city to construct a branch railroad in and upon certain streets of said city. The ordinance among other things authorizes said company to use for the construction and operation of its road a portion of Twentieth street in the city. This street runs east and west near the foot of a high hill. It is constructively sixty feet wide, but owing to the character of the ground on which it is located only thirty feet or less on the north side of it has been graded and opened as a street, leaving a high and almost perpendicular bluff on the south side of this grade near the center of the projected street. On the north side of this street and abutting upon it are two lots of land owned by the plaintiff, John Arbenz, and upon each of these lots there is a brick building constructed and used for manufacturing purposes. These lots also abut on public alleys at their respective ends and on Eoff street, which runs between them at right angles to Twentieth street. The ordinance provides, that the railroad company may construct its road in a cut or excavation along the bluff in said street, and thus occupy a small portion of the graded part of the street in front of the plaintiff's property. The excavation to begin at nothing at the eastern end of said property and gradually increase in depth going westward, until at a point beyond the said property it will be of sufficient depth to

admit of its being covered by a roadway, under which defendant's cars can pass. In front of the plaintiff's buildings the excavation will be an open cut in the street inclosed at the top by an iron railing, thereby separating the railroad track from the remaining graded portion of the street. The facts in the record show the present graded portion of Twentieth street along the front of this property is only about twenty four feet in width, and that after the railroad is constructed there will still remain open twenty two feet of this street between plaintiff's property and the said iron railing on the side of the railroad track; thereby making it appear that but two feet of the traveled and graded part of the street will be occupied by the excavation and railroad track. The heavy grade of the street at this point renders it impracticable to construct the railroad track on the surface grade of the street; and therefore, in order to construct the railroad along this street, the excavation is a necessity.

The said railway company having commenced the construction of its road along said street in the manner aforesaid, and under the authority of the aforesaid city ordinance, the plaintiff filed his bill in the Circuit Court of Ohio county alleging the aforesaid facts among others, and praying an injunction to restrain the defendant, the said railway company, from constructing its road along said Twentieth street in front of his property in the manner authorized by the said ordinance, upon the ground that the ordinance was unauthorized by law and void. The court on March 2, 1889, awarded a preliminary injunction. The defendant promptly answered the bill, and upon notice to the plaintiff the defendant moved the court to dissolve the injunction. This motion was fully heard, and on March 9, 1889, the court entered an order overruling it and refusing to dissolve the Injunction. The defendant thereupon moved the court to modify the injunction so as to permit the railroad company to proceed with the construction of its road upon giving bond with security to pay all damages and costs, which the plaintiff may sustain or incur by the construction of its road etc. This motion the court sustained, and the injunction was modified accordingly.

The plaintiff then moved the court for a rehearing of that

part of the order modifying the injunction; which motion
the court granted, and postponed the argument and the con-
sideration thereof to a future day.   Afterwards, on April 6,
1889, the court sustained said motion of the plaintiff and set
aside that portion of its order of March 9, 1889, allowing the
defendant upon giving bond to continue its work.   From
the said order of March 9, 1889, refusing to dissolve the in-
junction, and also from said order of April 6, 1889, setting
aside the order authorizing the defendant to give bond and
continue its work, the defendant has appealed to this Court.

No depositions were taken in the cause, and consequently
the only facts before us are those contained in the exhibits
filed, the admissions in the answer, and the allegations of
the bill not denied or controverted by the answer.

The plaintiff alleged in his bill several grounds for relief,
but one or more of them seem to have been abandoned,
and those argued and insisted upon in this Court may be
considered as resting upon a single proposition, viz., that the
council of the city of Wheeling had no legislative authority
to pass the said ordinance of January 18, 1889, giving to
the defendant, in the manner before stated, the exclusive
occupancy of a portion of Twentieth street.   It is insisted—
*First,* that such occupancy without legislative authority
would constitute a nuisance, and that such occupancy in the
absence of legislative authority was not and could not be
legalized by the city-ordinance; and, *second,* if it should be
held, that the city had the right, as between the public and
the city, to pass said ordinance, then this appropriation of a
portion of the street to the exclusive use of the defendant
would constitute an abandonment by the city of that portion
of the street, and the same would revert to the plaintiff as
the owner of the fee.

1. It may be conceded as a settled legal principle, that in
the absence of legislative authority empowering it to do so a
city or other municipal authority can not authorize by ordi-
nance or otherwise a private person or corporation to appro-
priate a street or any part of it, so as to exclude the general
public from its free and unobstructed use; and that this
principle applies to railroads as well as to other corporations.
The material question then to be now determined is, whether

or not the city of Wheeling had legislative authority to grant to the defendant the use of the street in the manner it did by said ordinance of January 18, 1889.

The forty-fifth section of the act of March 11, 1836, incorporating the city of Wheeling, provides as follows : "The council shall have authority within said city to lay out and cause to be opened any streets, walks, alleys, * * * and to graduate any street, walk, alley, * * * which is or shall be established within said city * * * and generally to ordain and enforce such regulations respecting the same, or any of them, as shall be proper for the health, interest, or convenience of the inhabitants of said city." In addition to this power granted to the city of Wheeling by its charter the legislature, in section 50 of chapter 54 of the Code of this state, has granted certain general powers to the defendant and other railroad corporations, among which are the following :

" To lay out its road not exceeding one hundred feet in width, and to construct the same ; and, for the purpose of excavations and embankments, to take as much more land as may be necessary for the proper construction, repair, and security of the railroad. * * * To change the grade or location, * * * and to adopt a new line, location, or route for the same, for the purpose of avoiding annoyance to public travel, or dangerous or difficult curves or grades, or unsafe, impracticable, or unsubstantial, or expensive or other-wise undesirable locations, routes, grounds, or foundations, or for other reasonable cause. * * * To construct its railroad across, along, or upon any stream of water, water-course, street, highway, road, turnpike, or canal which the route of such railroad shall intersect or touch ; but such corporation shall restore the stream, water-course, street, highway, road, turnpike, or canal, thus intersected or touched, to its former state, or to such state as not unnecessarily to have impaired its usefulness, and to keep such crossing in repair. Nothing in this chapter contained shall be construed to * * * authorize the construction of any railroad upon or across any street in the inhabited portion of the city, or incorporated town or village, without the assent of the corporation of such city, town, or village."

It will be observed, that the same section of this statute, which provides for the construction of a railroad along or upon a street and the establishment of its grade, also provides for the making of excavations and embankments, where "necessary for the proper construction, repair and security of the railroad;" and also contains the provision which declares, that the street intersected or touched shall be restored "to its former state, or to such state as not unnecessarily to have impaired its usefulness." The clear and necessary implication of this language is that the legislature intended to authorize the construction of a railroad along or upon a street in such manner that it would be impracticable to restore the street to its former state. Unless such was the purpose, the alternative provision limiting the duty of restoring the street would be without meaning or effect. In such cases the requirement is simply, that there shall be no unnecessary impairment of the usefulness of the street. Any necessary impairment, whether much or little, which is required for the proper construction of the railroad, is authorized by the statute. The only limitation is, that there must be no unnecessary impairment or interference with the street.

The facts in the case before us certainly do not show, that the power granted to the defendant by the city of Wheeling authorizes it to unnecessarily impair or interfere with the usefulness of Twentieth street. The evident purpose of this provision is, that the ordinary use of the street or highway should not be stopped by the railroad, but that its continuance should be provided for, when necessary, by alteration in the street itself, which should increase the impediment and inconvenience of travel upon it as little as possible. It is obvious, that in many cases this would be necessary, because from the nature of the work it is important and often necessary, that the railroad should be kept on a given level and not be raised so as to adapt it to the existing levels of the street. *Turnpike Corp.* v. *Railroad Co.*, 23 Pick. 326; *Railroad Co.* v. *Railroad Co.*, 17 W. Va., syllabus 17, pp. 813, 852.

It is insisted for the appellee, and it is unquestionably true, that corporations, whether railroad or municipal, have only the powers conferred upon them by their charters or the general statutes applicable to them; and these powers are

only such as are granted in express words, those necessarily and fairly implied in the powers expressly granted and those indispensable to the declared objects of the corporation. *Charleston* v. *Reed*, 27 W. Va. 681; *Gas Co.* v. *Parkersburg*, 30 W. Va. 435, 439, (4 S. E. Rep. 650.)

While this is the established rule in respect to the powers or corporations, it is equally true and well established, that power to do an act carries with it the authority to do it in a mode, that is just, reasonable and practicable, taking into consideration the peculiar circumstances of each case. *Railroad Co.* v. *Railroad Co.*, 84 Ala. 570, (3 South Rep. 286.)

The legislature may well be careful in delegating powers to corporations; but when it does grant powers, it must be presumed to grant them with confidence in the judgment and discretion of the corporation, allowing all that freedom in the choice of means proper to attain the desired end, which is needed to insure success. In respect to the limited powers of Congress under the federal constitution, the Supreme Court of the United States held : "If the end be legitimate, and within the scope of the constitution, all the means which are appropriate, which are plainly adapted to that end, and which are not prohibited, may be constitutionally employed to carry it into effect." *McCulloch* v. *Maryland*, 4 Wheat. 316; *Gibbons* v. *Ogden*, 9 Wheat. 1. Every grant of power is intended to be efficacious and beneficial, and to accomplish its declared object carries with it such incidental powers as are requisite to its exercise. If then the exercise of the power granted draws after it a necessary consequence, the law contemplated that consequence. *Inhabitants* v. *Railroad Co.*, 4 Cush. 63, 72.

It must be conceded, that the legislature by the statute above quoted has in express words granted to railroad companies the power to construct roads along or upon the streets of a city. It must also be conceded as facts well known to the legislature, and of which we may take judicial notice, that West Virginia is a mountainous state, and that many of the streets of its cities, towns, and villages are upon hilly ground, and their grades uneven and steep. The grade of a railroad necessarily embraces considerations of convenience, expense and facility of construction and operation, and is

fixed at a particular point with reference to grades at other points. It is therefore not only proper and reasonable but almost indispensable, that railroad companies should be allowed a very large discretion in the location and fixing of the grades of their roads. It seems to me to be a fair presumption, that, when the legislature granted to railroad companies the right to occupy and use the streets of cities, towns and villages of this state, it intended, that they should have the privilege of constructing their roads to a large extent in their own way, and of passing along and upon or crossing the street, over, under, or at grade, provided they shall not unnecessarily impair the usefulness of the street. *People* v. *Railroad Co.*, 74 N. Y. 302; *Adams* v. *Railroad Co.*, 11 Barb. 414, 450.

This construction of our statute is greatly strengthened by the qualification therein, which prohibits railroads from occupying any street without the assent of the municipal authorities. It is very safe to assume that the city authorities will be careful to protect their streets from any improper use by a railroad company; and that in giving their assent for the use of a street they will provide, that its usefulness shall be impaired in the least possible degree. It is certainly possible, that under some circumstances it may be more practicable and cause less inconvenience to the public, and do less injury to the abutting lot-owners, to allow the railroad to occupy a portion of the street at a grade below or above the grade used by the general public. Therefore, unless it clearly appears, that the municipal authorities have abused their discretion by allowing such occupation of the street, as will unnecessarily impair its usefulness, it seems to me, it would be very unwise and improper for the courts to undertake to supervise their action. *Plant* v. *Railroad Co.*, 10 Barb. 26.

It is contended however for the appellee, that by the use of the words "across, along or upon" in the statute the legislature intended to limit and restrict the grant, so that the railroad should be upon the surface at a common level with the rest of the street, in order that the public may use the entire street at all times, except when trains are passing; and that this restriction was designed to prohibit the railroad from the exclusive occupation of any part of the street.

It is claimed that the words "across, along, and upon" must be applied distributively to the words "stream of water, water-course, street, highway" etc.; that the word "along" should be referred to a "stream of water or water-course," and means along the side of the stream; while the word "upon" must be referred to a "street or highway," and means upon the surface of the street. In support of this construction we are referred to the case of Stevens v. Railway Co., 21 N. J. Eq. 259, 34 N. J. Law, 532. These authorities simply show, that the context of the New Jersey statute authorizing a railroad company to construct its road along a river did not authorize it to construct its road in or upon the river, but along-side of it; because to construct the road in the river would require the filling in of the river-bed, which it had no authority to do. There were other considerations in that case that controlled the action of the court which are wanting in the case at bar. The word "along," used with reference to a street, could not, in our statute, mean "along the side" of the street, because such meaning would confer no right whatever in respect to the street, but would leave the railroad to make its way through the adjoining lots owned by private individuals without the consent of the city, or any aid from this statute. Heath v. Railway Co., 61 Iowa, 11 (15 N. W. Rep. 573). The word "upon," in this statute, does not necessarily mean upon the common grade of the street. In order to thus confine its meaning, we must imply the words "level with the surface." There is nothing in the context to require or even to justify this implication.

For the reasons before stated, I am of opinion that the words "along or upon" employed in the statute must be construed with reference to the context and the subject in controversy, and when so fairly construed in respect to a case such as the one now under consideration, they mean along in the street, at, above, or below the common level of the existing or changed surface of the street, as the particular facts and circumstances may require. But I am of opinion, that this statute does not authorize the occupancy by a railroad for its exclusive use of the entire street or of such considerable portion of it, as would substantially

prevent the use of it by the general public, notwithstanding such exclusive use may be expressly authorized by the city authorities. Where the railroad occupies a different grade, either in an excavation below or upon an embankment above the general surface or grade of the street, it necessarily has the exclusive use of the portion of the street so occupied by it. The use of the word "unnecessarily," in the statute, clearly implies that the usefulness of the street may be to some extent impaired; but this certainly does not mean that the street should be rendered useless.

The streets of cities are public highways and as such under the control of the State alone, and the State may grant the use of them against the will of the municipality. The city alone can not grant to a railroad the privilege of using its streets, as the power is in the legislature. The legislature may discontinue the use of streets without restraint from private citizens claiming to be interested in the continuance of the street as adjoining owners or otherwise. The control of city-streets may be properly delegated to the city-authorities with discretion to impose conditions on the use of the street; but the power is not in the city, unless expressly delegated. Mills, Em. Dom. § 202; Railway Co. v. City of Covington, 9 Bush, 127.

In the case before us it appears, that Twentieth street is not materially obstructed, nor is its usefulness unnecessarily or unreasonably impaired. The facts show, that the present width of the graded portion of the street in front of the plaintiff's property is only twenty four feet, and that after the proposed excavation is made for the defendant's railroad, the unobstructed portion of the street will still be twenty two feet; thus showing that but two feet of the present open and graded part of the street will be occupied by the railroad. As before stated, there is nothing in the record of this case to show, that this is either an unnecessary or unreasonable appropriation or use of the street; and therefore we must hold, that it is authorized by the statute, and that the use and occupation of it by the railroad company in the manner aforesaid will not constitute a nuisance. Perry v. Railroad Co., 55 Ala. 413; 2 Dill. Mun. Corp § 711, (564.)

2. After what has been said in the preceding portion of this opinion, very little discussion is required to show the untenability of the second proposition of the appellee, viz., that the appropriation of a portion of Twentieth street by the city to the exclusive use of the railroad constitutes an abandonment by the city of its easement in that portion of the street, and consequently the title reverts to the plaintiff as the owner of the fee. It might be a sufficient answer to this claim to urge, that the record does not show, that the plaintiff is the owner of the fee in this street. It is true, his bill avers, that he is such owner ; but the answer of the defendant denies this averment, and there is no proof to sustain it. But for present purposes we will assume, that the plaintiff is the owner of the fee in the street subject to the easement in the public.

The use by a railroad under legislative authority of the street of a city in its ordinary use as a means of travel and transportation is not an abandonment or perversion of the street from its original purposes. Time, the unerring test in the utilization of new discoveries, has demonstrated, that long and connecting lines of railroad greatly facilitate and cheapen transportation. To construct and operate such lines, it is necessary, that cities shall be traversed by them. The city is necessarily traversed by and through its streets, and by laying a railroad track through or along a public street the use and comfort of the latter as a highway must be somewhat impaired. When this is done under proper authority, it is but the assertion of so much of the sovereign power and discretion, by which the enjoyment of one right or easement is abridged, that the public may have another deemed to be of greater value. *Perry* v. *Railroad Co.*, 55 Ala. 413, 424 ; *Porter* v. *Railroad Co.*, 33 Mo. 128. This doctrine is especially true in this State, because our constitution (article XI, § 9) expressly declares, that all railroads shall be public highways free to all persons for the transportation of their persons and property. The use of a street therefore in this State by a railroad for its track is not an abandonment of the easement, but simply the imposition of an additional servitude for the benefit of the public.

All the questions involved in this case were necessarily

decided by this Court in *Spencer* v. *Railroad Co.*, 23 W. Va. 406. In that case however no question was raised as to the right of the railroad company to occupy the street; and therefore in deference to the very earnest and ingenious argument of the counsel for the appellee I have deemed it proper to consider, as I have done, the grounds upon which that right is founded. But while the right was conceded and not discussed in that case, it was involved, and of necessity decided. There the railroad company with the consent of the municipal authority constructed along in the center of one of the public streets of the town an approach to a railroad bridge, consisting of trestle-work and masonry upon which the track of the railroad was laid several feet above the surface or common level of the street. Spencer, an abutting lot-owner, sought by injunction to restrain the railroad company from constructing its approach in front of his lot, until compensation should first have been made to him as the owner of the fee in the street. This Court decided, that such use and occupation of the street by the railroad company was not a taking of the plaintiff's property, and that he was not entitled to an injunction to prevent the construction of said approach, until the damages, he might sustain, should be ascertained and paid. The second and sixth points in the syllabus of that case are as follows :

"(2) If a railroad company without taking the land damages it by the construction of its road, the owner of such land can not as a matter of right enjoin said company so proceeding with the construction of its road, till such damages are ascertained and paid; for section 9 of article III. of our constitution, while it gives a right in such cases to recover of a railroad company such damages in an action at law, does not give a right to such injunction, as it does not require such damages to be paid or secured to be paid, before such damages actually arise by the construction of the road."

"(6) But such lot-owners, whether they own such fee in the street or not, may, by an action at law, recover of such railroad company such damages as they might have recovered in a common-law suit, had the railroad company built its road in said street without proper authority ; for while such railroad company has built its road by proper authority, con-

ferred directly by the legislature, or by a town-council author-
ized so to do by the legislature, it can not be regarded as
committing a nuisance in so building its road, and using it
in a careful and proper manner. Yet, under section 9 of ar-
ticle III. of our constitution, said railroad company is liable
.for the permanent damages it inflicts on such adjoining lots,
in the same manner as if it had built its road without such
proper authority; but, after it has been once sued for such
damages, it is not liable to be sued for the nuisances which
necessarily result from the running of its cars through such
street, for, in so doing, it is only exercising its rights, and is
not committing a nuisance."

The only qualification of the general rule thus announced
is, that, when the property of the lot or land owner, though
not actually appropriated by the railroad company for its
uses, is nevertheless as effectually destroyed in value, as if it
had been in fact taken by the company for the construction
of its road, the owner of the property so destroyed may obtain
an injunction to restrain the company, until the damages are
paid or secured to be paid.    *Mason* v. *Bridge Co.*, 17 W. Va.
396.

In the case before us, whatever may be the character and
extent of the damage to the property of the plaintiff by the
construction and operation of the railroad in the manner
proposed by the defendant, it is quite certain, that it will not
amount to such an absolute destruction of the value of the
property, as will be equivalent to a virtual taking of it; and
therefore according to the decision of this Court in the afore-
said case of *Spencer* v. *Railroad Co.*, the plaintiff was not en-
titled to an injunction to restrain the defendant from the
construction of its road along Twentieth street in the man-
ner it claims the right to do in its answer, and consequently
the Circuit Court erred in refusing to wholly dissolve the in-
junction.

The questions as to whether or not the plaintiff is entitled
to damages for the injury, if any, done to his property by the
construction and operation of the defendant's railroad along
Twentieth street, or the extent of said injury, and the
amount of said damages, do not arise in this suit; because
.for the reasons before stated his redress for such injury and

the recovery for such damages must be sought by him in a proper action at law, after he has sustained the damages by the actual construction of the railroad.

It necessarily follows from this conclusion, that the Circuit Court also erred by its order of April 6, 1889, setting aside the order of March 9, 1889, modifying the injunction so as to allow the defendant to proceed with the construction of its road upon giving bond *etc.* The injunction itself being improper, every act or order suspending its operation or destroying its effect would diminish the error; while the setting aside of such order would of course prejudice the right and increase the wrong,

For the reasons aforesaid I am of opinion, that so much of the aforesaid order of March 9, 1889, as overruled the defendant's motion to dissolve the injunction, and the whole of said order of April 6, 1889, should be reversed; and, this Court proceeding to enter such order and decree as the Circuit Court should have entered, it is ordered, that the injunction awarded the plaintiff on March 2, 1889, be wholly dissolved, and the plaintiff's bill be dismissed, with costs.

REVERSED.