# WHEELING.

J. FAY WATSON *v.* FAIRMONT AND SUBURBAN RAILWAY CO. *et als*

Decided June 18, 1901.

1. LEGISLATIVE ACT CONSTRUED—*City Charter.*
    When the legislative act, incorporating a city, provides that "The council of said city shall have power to grant and regu-

late all franchises in, over and under the streets, alleys and public ways of the said city, under such restrictions as 'shall be provided by ordinance, but no exclusive franchise shall be granted to any individual or corporation," the legislature thereby delegates to the council of such city authority to pass an ordiance, granting to an individual or a corporation the right to construct and operate a street railway in the streets of such city.   (p. 535).

2.  CITY FRANCHISE—*Power to Assign.*

Although such franchise is usually conferred upon a private corporation, it may be granted to an individual, and, with the consent of the council having such delegated power over the subject, he may make a valid assignment of the same to a private corporation, organized for the purpose of constructing and operating such street railway.   (p. 538).

3.  CITY FRANCHISE—*Holder—Private Property Taken.*

The holder of such franchise, although privately interested in the enterprise thereby provided for, is nevertheless an agency or instrumentality in the hands of the public authorities for the accomplishmnet of public purposes and benefits and subject to their control, and private property may lawfully be taken and damaged in the execution of the ordinance, but the constitution and statutes provide that just compensation shall be paid to the owner of the property so taken and damaged. (p. 538).

4.  CORPORATIONS—*Right of Way—Injunctions.*

When the certificate of incorporation of a railway company states that the purpose of the corporation is to construct and operate a railroad, designating certain points as *termini* of the proposed road, and that it is to run through the city of F., and said company lawfully acquires a franchise to construct and operate a street railway in said city, and, in pursuance of the ordinance, granting the franchise, is proceeding to build its track in one of the streets of said city, the owner of real estate adjoining said street cannot enjoin the company from so doing, whether the charter of the company authorizes it to construct and operate a street railway or not, unless, upon the ordinary principles of equity jurisprudence, he has grounds for equitable relief against the company. If it be true that the corporation is exceeding its corporate powers, that fact is not alone sufficient ground for equitable interference at the suit of a person who is not a member of the company.   (p. 540).

5.  PRIVATE PROPERTY—*Compensation—Damages.*

Such adjoining lot owner cannot restrain the construction of the railway in the street upon which his property abuts until the damage to his property, resulting from such use of the street, is ascertained and paid or secured, unless the injury to

his property is so great as to destroy its value and therefore amounts to a virtual taking of the property for the use of the railway company. Section 9 of Article III of the Constitution provides that compensation shall be paid to the owner of the property for such damages and gives him an action at law therefor, but does not, as in cases where the property is actually taken, require the compensation to be paid or secured before the injury is inflicted; and, having an adequate reemdy at law for the injury, the owner of such lot can have no reief in a court of equity on account thereof, if the legislature has authorized the construction and operation of the railway in such street. (p. 541).

6. CORPORATIONS AUTHORITY—*Nuisance.*
    When a person or corporation is authorized by the legislature by an express statute to do an act, or by the council of a city or town to which the power to authorize it has been delegated by a legislative act, such person or corporation cannot be be regarded as committing a nuisance in the execution of such act nor proceeded against merely upon the theory that it is a nuisance, either at law or in equity. (p. 541).

Appeal from Circuit Court, Marion County.

Bill by J. Fay Watson against the Fairmont & Suburban Railway Company and others. Decree for plaintiff, and defendants appeal.

*Reversed.*

C. POWELL, W. S. MEREDITH and JOHN A. HOWARD, for appellants.

W. H. CONAWAY, U. N. ARNETT, JR., and W. W. ARNETT, for appellee.

POFFENBARGER, JUDGE:

J. Fay Watson, the plaintiff below and appellee herein, filed his bill in equity in the circuit court of Marion County, November 30, 1900, to enjoin the appellants, B. K. McMechen and Fairmont and Suburban Railway Company, from constructing and operating a street railway on Locust avenue in the city of Fairmont, under an ordinance passed by the council of said city on the 20th day of June, 1900, granting to said McMechen, his successors and assigns, the right to construct, equip, maintain and operate such railway on and over all or any of the streets of said city which are twenty feet or more in width from curb to curb, the tracks to be laid in the middle of the streets as far as prac-

ticable. The ordinance recites that it was understood that said McMechen intended to assign all his rights thereunder to a corporation which should construct and operate the railway thereby authorized, and provided that when McMechen should execute a written assignment of such rights to any person or corporation and file a copy thereof with the recorder of the city of Fairmont for record, the person or corporation to whom such assignment should be so made should have such rights and privileges. The agreement to form the corporation, Fairmont and Suburban Railway Company, is dated June 18, 1900, and the certificate of incorporation June 21, 1900. The certificate and power of attorney were presented for record in the clerk's office of the county court of Ohio County, September 3, 1900, the principal office of the company being in said county. McMechen accepted the ordinance June 20, 1900, and executed the assignment to the railway company, September 25, 1900, but it was not filed with the recorder for record until December 4, 1900, after this suit was instituted.

The principal allegations of the bill are that Locust avenue is a narrow street running the entire length of the Fifth ward of said city and is the main or principal street in said ward for traveling and hauling and the only street by which large numbers of residents and property holders in said ward can reach their property; that a considerable portion of it is paved and on each side thereof is a large number of handsome and costly residences and business houses, now occupied; that the plaintiff is the owner in fee of a large acreage of real estate fronting and abutting on the northern side thereof for about one thousand four hundred feet, which real estate has been laid off into town lots, with streets and alleys laid off and graded; that the plaintiff has expended about forty thousand dollars within the past eighteen months in the construction of residences and business houses on said lots; that he and not the city of Fairmont is the owner in fee of the street upon which said property abuts to the center thereof, subject to the public right of way over the same; that, in several places, said street is not more than twelve or fifteen feet wide and if the defendants are permitted to go on and build said railway track it will result in great and irreparable injury and loss to the plaintiff, will greatly lessen the width of the street, will not leave sufficient room for wagons, carriages and vehicles to pass on either side of the track, will unneces-

sarily, injuriously and unlawfully obstruct and hinder travel on said street, will materially and wrongfully injure, obstruct and destroy plaintiff's free right of access, ingress, egress and regress to and from his said property, and will deprive him of the free and uninterrupted use and enjoyment of said street as appurtenant to his said property, without having first paid to him any just compensation for the injury or damages; that the defendants, in building said track, will greatly injure, damage and depreciate the value of plaintiff's said real estate, fronting and abutting on said street, without having first ascertained and paid to him the just compensation to which he is entitled under the provisions of the constitution of the State; that the defendants, in pursuance of said ordinance, have unlawfully entered upon said street with a large force of men and have actually commenced to take up and remove the pavement thereon and dig and excavate and grade said street along where the property of the plaintiff fronts thereon, preparatory to the construction, building and laying of said railway track thereon; that the defendants are constructing said road contrary to the terms of the ordinance; that the charter of the city does not confer upon the council power to grant to an individual such franchise as it has attempted so to grant; that McMechen acquired no rights or privileges under said ordinance because the same is void, its passage being an act in excess of the powers of said council; that the ordinance does not prescribe with legal certainty the location of said proposed railway and is for that reason void; and that the railway company acquired no rights in said street by virtue of the assignment executed to it by McMechen.

The prayer is that the defendants be enjoined and restrained from digging up, excavating and grading said street and from building and constructing said street railway track thereon, until the damage to plaintiff's said real estate and property be ascertained and a just compensation paid to plaintiff for the injury and damage resulting to, or that may hereafter result to, said property in consequence of the building, constructing and maintaining said street railway track in said street, and that the plaintiff be granted other and general relief.

On the 30th day of November, 1900, an injunction was granted according to the prayer of the bill. On December 1,

1900, the defendants moved the court to dissolve the injunction; on December 5, 1900, they withdrew their motion to dissolve and filed a demurrer to the bill and also tendered their joint and several answers thereto; on December 8, 1900, the answer was filed and replied to generally and the plaintiff filed an amended bill, making the City of Fairmont a defendant; on December 10, 1900, all the defendants filed their demurrer and joint and several answer to the bill and amended bill; on December 12, 1900, dissolution of the injunction was again moved and the motion docketed; on January 5, 1901, the motion was argued and by the court overruled; and on March 23, 1901, after depositions had been taken and filed by both plaintiff and defendants, the cause came on for final hearing and the demurrers and motion to dissolve were overruled and the injunction perpetuated and made permanent.

The amended bill adopts the allegations' and prayer of the original and further alleges that the railway company was incorporated to build and operate a railroad between designated points in Marion County and through the city of Fairmont and its charter does not authorize the construction and operation of a street railway; that the assignment executed by McMechen to the railway company was not filed for record as aforesaid until December 4, 1900; and that the attempt by said city to grant to an individual or railroad company the right and privilege to exclusively use and occupy said street or any part thereof to the exclusion of the plaintiff and the traveling public is an usurpation of power and authority and therefore an *ultra vires* act. The ordinance is not exclusive on its face but the bill argues that it so operates as to that street. The additional prayer of the amended bill is that the ordinance be decreed to be invalid and void and rescinded, canceled and set aside and that the assignment be decreed to be void.

The answers are responsive to the bills and full and complete, denying all the alleged equities of the bills. It appears from the evidence that the paved portion of the street is twenty-four feet wide and the space between the fences, including the pavement and walks and spaces for walks not put in, varies from thirty-seven and one-tenth feet to forty and three-tenths feet. In the paved street the center is its highest point and from the crest or center to the sides the surface is a curve, extending to

within one and six-tenths feet of the outer edge, and from there it slopes up to the edge, thus forming a drain for the water, this depression being three inches. This depression can be used by vehicles passing over it. Several hundred feet of the street is not paved. It was formerly a mecadamized road, sixteen or eighteen feet wide, but is not now in good repair at certain places. On the north side of it there was a gutter or drain of irregular width, averaging about two and one-half feet, and on the other side a board walk five feet wide. There are places at which this road, exclusive of the board walk and gutter, is not more than fifteen feet wide. But it seems to be admitted that a twenty-four-foot paved street, with sufficient walks, can be made without taking additional land for public use, but at considerable expense. The street cars to be used are not more than seven feet five inches wide, and by placing the track on one side of the road at this narrow place, vehicles will be able to pass running cars, although the operation of the railway will cause some inconvenience and possibly danger to persons using wagons and carriages on that street.

The specific grounds of demurrer assigned are, first, that injunction is not the proper remedy for the injury sustained by the plaintiff, because he has an action at law for his damages, the object of the suit being not to prevent the taking of private property for public use, but merely to prevent damages thereto by reason of the lawful construction and operatioon of a work of internal improvement; second, that the bill does not allege facts from which it appears that the plaintiff will be irreparably injured, although it does allege that he will suffer such injury; third, that even if the averments, assailing the validity of the ordinance and the regularity of the incorporation of the company are true, the plaintiff, suing in his own behalf only, cannot complain of such invalidity and irregularity. Of these the second need not be noticed, and of the other two the last will be considered first, to the end that the case may be stripped of irrelevant discussion and the real question disclosed.

It is argued for the appellee that the ordinance is void because it amounts to a surrender of the police power of the city over the streets. The authorities cited in support of this contention are cases in which the question decided is that the council has power to repeal an ordinance, granting privileges in the street,

which it had no legal authority to grant and are therefore absolutely void. They were contests between the city and the grantee of the franchise, and are in no sense applicable to this case. They are found in 13 L. R. A. 454, 19 L. R. A. 510, 20 L. R. A. 126, and 29 Grat. 534. It is further contended that the franchise granted McMechen could not be assigned by him. The only case cited which seems to bear any relation at all to this proposition is *Richardson* v. *Sibley,* 11 Allen 65, 87 Am. Dec. 700, which holds that a corporation created for the purpose of construction, owning and managing a railroad, for the accommodation and benefit of the public, cannot, without distinct legislative authority, make any alienation, absolute or conditional, either of the general franchise to be a corporation, or of the subordinate franchise to manage and carry on its corporate business. But legislative authority to make the assignment is not wanting in this instance. The council expressly gave its consent thereto, in the ordinance itself, and it had legislative authority so to do. The legislature delegated full power and authority over the subject matter to the city council by the provision in the charter of the city that "The council of said city shall have power to grant and regulate all franchises in, over and under the streets, alleys and public ways of the said city, under such restrictions as shall be provided by ordinance, but no exclusive franchise shall be granted by said council to any individual or corporation.". In this connection, counsel for appellee direct attention to clause 10, section 69, chapter 54 of the Code, providing that "No franchise or right of way, acquired by virtue of this act, shall be sold, leased or otherwise transferred, without the consent of the legislature first had and obtained." An examination of the section in which this clause is found leads to the conclusion that to say the least it is very doubtful whether it applies to a franchise such as that granted by a city, and, if it does, it is hardly necessary to repeat that McMechen obtained such consent. Another claim is that equity has jurisdiction to restrain the enforcement of an invalid ordinance, the execution of which injuriously affects the private rights of the complainant. *Deem* v. *Baltimore,* 26 L. R. A. 541. It by no means follows from this that he may enjoin the execution of a valid ordinance. This ordinance grants no privileges not ordinarily conferred upon street railway companies. It is legally certain as to the location

of the road for it authorizes its construction upon all streets twenty feet or more in width, and the location of the streets is presumably well known and clearly defined. It is not exclusive on its face nor in its operation, and the council had legislative authority to pass it. It is a valid ordinance and its execution cannot be enjoined upon the authority of the case cited.

The charter of said railway company contains this clause: "The railroad which this corporation proposes to build will commence at or near Scotdale in Marion County, West Virginia, and run thence by the most practicable route through the city of Fairmont and to points at or near Monongah in the county of Marion and State of West Virginia, and will run to such other points in the counties of Marion, Monongalia and Harrison in the State of West Virginia as may be deemed practicable." It further states that the corporation is formed "for the purpose of constructing and operating a railroad in the State of West Virginia." It nowhere states that it is to be a street railway, and counsel for the appellee contends that, under this charter, the company is not authorized to construct and operate a street railway, citing Joyce on Electric Law, 150; *Com.* v. *E. & N. E. R. R. Co.*, 27 Pa. St. 339; *Stamford* v. *Stamford H. R. R. Co.*, 1 L. R. A. 375; and *Mazet* v. *Pittsburg*, 137 Pa. St. 553. The last case concerns a paving contract between the city and an individual and the contest is between them. It bears no sort of relation to the question raised. *Stamford* v. *Stamford* holds that the town may restrain the company from laying its track in a street not designated in its charter, specifying the streets to be occupied, the sole authority of the company being contained in the charter and having been obtained directly from the legislature. The Fairmont company is operated under a franchise obtained from the city council under powers delegated to it by the legislature as well as under its charter or certificate of incorporation. This is a very important distinction between the two cases. Another is that in the case cited the proceeding was at the suit of the town and not of an individual. In *Com.* v. *Ry. Co.*, the proceeding was on the part of the state, under a statute expressly authorizing it, and, therefore, different from this in two essential particulars. The citation in Joyce is found not to touch the question at all. As to whether a street railway is included in the term "railroad" must be determined in each case

from the intent and purpose of the statute. 23 Am. & Eng.
Ency. Law 942. "An eminent domain statute will include
electric street railroads within the words 'steam and horse rail-
roads' even though electricity was unknown when the statute
was passed." Joyce on Elec. Law 168. It is not necessary to the
decision of this case that the statute be construed in this re-
spect. Nor is it important for the purposes of this suit whether
the charter of the company authorizes it to construct and operate
a street railway. The company is a mere agency in the exercise
by the city of Fairmont of the power conferred upon it by the
legislature to legalize the construction of the railway in its
streets. It is a work of internal improvement and of great pub-
lic concern and it is comparatively unimportant by what agency
or instrumentality it is effected. If the company, in construct-
ing such a railway, is doing an act not authorized by its charter,
the State, by a direct proceeding for the purpose, may restrain
it from so doing and probably forfeit its charter, but the legality
of the act cannot be questioned collaterally; nor as a general
rule can the act be enjoined by an individual. "The fact that a
corporation is about to exceed its corporate powers, or to commit
any other unlawful act, is not alone a sufficient ground for the
interference of chancery suits at the suit of a person who is not a
member of the company. This rule rests upon the obvious prin-
ciple that no person can complain of a wrong without showing
some special injury to himself. If a coproration exceeds its
franchise, or commits any other breach of the law, this is an
injury to the public generally; and it is well settled that, for
an injury to the public generally, the individuals composing the
public cannot sue separately, but the State must sue on behalf
of all." Morawetz on Priv. Cor. s. 1041. "It is well settled
that a court of chancery has jurisdiction to grant equitable relief
against a corporation at the suit of an individual, whenever a
sufficient case for equitable relief is shown, upon the ordinary
principles of equity jurisprudence; and the fact that the act of
the corporation against which relief is sought involves an un-
authorized exercise of corporate power, or other breach of the
law, is wholly immaterial under these circumstances." Mor.
Priv. Cor. 1042.

For whatever damage the construction and operation of the
railway may inflict upon the property of the plaintiff, if any,

he has an adequate remedy at law. Sec. 9, Art. III of the Constitution gives him compensation for such damages, and this Court, in construing said section in *Spencer* v. *R. R. Co.,* 23 W. Va. 406, and *Arbenz* v. *R. R. Co.,* 33 W. Va. 1, holds that his remedy therefor is an action at law and, further, that the owner of a lot adjoining a street upon which a railroad proposes to locate its track under permission of the town council cannot enjoin the company from building its track in such street in front of his property until his compensation for damages is ascertained and paid, whether he is the owner of the fee in such street or not. Thus having an adequate remedy at law for such damages as may result to his property from the act complained of, the plaintiff is precluded, upon the ordinary principles of equity jurisprudence, referred to by Morawetz, from coming into a court of equity for such relief and to complain of an alleged wrong or injury to the public genearlly, committed by said company. In this view of the case, it is a matter of no consequence to him whether the company is acting in excess of the powers conferred by its charter, for it would be estopped from setting up as a defense, in his action against it for the damages, the illegality of the act in question.

The rule mentioned by Morawetz is well illustrated in Beach on Priv. Cor. s. 397, as follows: "Thus where a railway company is organized under a valid charter, and is shown to have done corporate acts under it, this is sufficient to establish a *prima facie* right to take property by eminent domain, and this *prima facie* right cannot be successfully assailed in a mere collateral proceeding. Proof that the petitioner is a corporation *de facto* is all the law requires in this class of cases. Evidence, although it may be slight, of corporate acts done by petitioner, is accepted as sufficient. Thus where it appears that an engineer has been appointed, the line of the road has been located, and other steps taken towards the building of the road, these are corporate acts sufficient to show that the petitioner is a corporation *de facto.*"

The act of the railway company sought to be enjoined here does not go to the extreme of taking private property for public use and no stricter rule should be applied in this case than in the case of such a corporation in the exercise of the powers of eminent domain. The construction of the railway track in the

street under the ordinance is not a taking of the plaintiff's fee in the street. In *Spencer* v. *R. R. Co.,* 23 W. Va. 406, this Court held that "If a railroad company with the consent of the town council builds its road through the streets of a town, the fee of the ground on which the street is located being in the adjoining owners of the lots, the railroad company does not take the property of such lot owners, but only an easement from such town, a simple right of way so long as the council has an easement in such ground to use it as a street." This is approved in *Arbenz* v. *R. R. Co. supra.*

That this work of internal improvement may be built and operated it is not necessary that the grantee of the franchise should be incorporated at all. "Franchises are special privileges conferred by government upon individuals, and which do not belong to the citizens of the country generally, of common right." 8 Am. & Eng. Ency. Law 585. "A franchise may be defined as a privilege or authority vested in certain persons by grant of the sovereign to exercise powers or to do and perform acts which, without such grant, they could not do or perform." Lewis on Eminent Domain, 135: "*While no rule of law demands it,* they are usually conferred upon corporations for obvious reasons of good business policy." 8 Am. & Eng. Ency. Law 586. This seems also to dispose of the objection by counsel for appellee that the city council had no authority to grant the franchise in question to McMechen, a private individual. Upon this contention, they cite Joyce on Elec. Law, 150, 151 and 202; and 2 Dill. on Mun. Cor. pp. 859 and 861. The sections cited in Joyce do not mention the question, and in Dillon, at page 861, the case of *Brown* v. *Duplessis,* 14 La. 842, is adverted to, holding that such grant may be made to private individuals.

The subjection of the streets to the use of the street railway company is simply the imposition thereon of an additional burden or servitude for the benefit of the public, although the company, the holder of the franchise, is privately interested in the enterprise in a manner different from all other persons. While it operates in the premises for private gain, it is at the same time an agency or instrumentality in the hands of the public authorities for the accomplishment of public ends, purposes and benefits. The public interest in such cases is dominant and that of the company and all other private persons is subordinated

thereto by the law, but the constitution guarantees compensation for private property taken and damaged thereby. Moreover, the public highways are not held for any particular or exclusive sort of use by the public. As new methods of use and occupation, consistent with the old methods, result from invention, discovery and progress they must be admitted. The tracks of street railways being laid even with the surface of the street so they may be passed over by the vehicles ordinarily in use, without any serious inconvenience, nobody is thereby excluded from the free use of the streets. While the ordinary modes of use may be somewhat impeded thereby, this consideration must yield to the advantages resulting from the promotion of trade and intercourse, the uniting of distant portions of the city, the establishment of closer relations between it and its suburbs, commercially and socially, and the conduciveness to the health and comfort of the citizens by enabling them to live beyond the crowded thoroughfares. The street railway has become one of the usual and well recognized modes of conveyance in all the cities and larger towns of the country, and as thoroughly a *quasi* public institution as any other common carrier. The city council of the city of Fairmont, clothed by the legislature with plenary powers over the subject, having given the necessary consent to the establishment in that city of the railway in question, its construction and operation is by lawful authority. The legislature having thus authorized the work, the execution thereof cannot be enjoined by an individual upon the ground that it is a public nuisance and specially injurious to his property, even in a case in which he might do so had such authority not been given. This is well settled in *Spencer* v. *R. R. Co.* and *Arbenz* v. *R. R. Co., supra.* and in *Taylor* v. *B. O. R. R. Co.,* 33 W. Va. 39. In *Spencer* v. *R. R. Co.,* the law is so declared in the syllabus, and in the opinion, JUDGE GREEN says, after citing many decisions, "It is obvious, therefore, that when a railroad company is authorized by the legislature by an express statute, or when authorized by a town council by authority of a legislative statute, which is the same, it cannot either at law or in equity be sued or enjoined, if it is proceeding to build its road in such street carefully and skillfully, and in a manner least injurious to others. And if the constitution gives the owner of an adjoining lot no redress, the injury he sustains must be regarded as

*damnum absque injuria."* The doctrine is reiterated in *Arbenz* v. *R. R. Co.* Point 2 of the syllabus in *Taylor* v. *R. R. Co., supra,* is as follows: "When a person or corporation is vested with authority by the legislature to do an act, it will be protected from all responsibility and liable to no suit at law or in equity, provided what it is authorized to do is done carefully and skillfully, though without such authority it would have been a nuisance; but, if done carelessly and unskillfully, and damages result from such carelessness and want of skill, it will be responsible." In *McEldowney* v. *Lowther,* decided March 23, 1901, (49 W. Va.), this Court held that a person owning property adjoining a street can restrain a telephone company from erecting a telephone line on the side of the street next to his property, when the council has authorized the erection of only one line on said street, and the company, in pursuance of the ordinance, has already put its one line up on the other side of the street, the plaintiff showing that the erection of the second and unauthorized line will be injurious to him. Had the council authorized it, the second line might have been put up, although injurious to the property holder. Such being the law, the injunction in this case cannot be sustained upon the contention that the construction and operation of the railway will be a public nuisance.

The only remaining inquiry and the real question presented by the bill is, can the plaintiff, whose property is not to be taken or destroyed and thus virtually taken, by the railway company, in the construction and operation of its road, but only injured and damaged, enjoin the construction of the railway until his damages are ascertained and paid? It has already been shown herein that in building its road the railway company does not take the plaintiff's fee in the street, and the bill does not claim that his adjoining property will be destroyed or practically so by the railway, nor does this appear from the facts alleged. Thus the situation is the same as in the Spencer and Arbenz cases. In the former of these two cases, the Court held, "If a railroad company, without taking the land, damages it by the construction of its road, the owner of the land cannot, as a matter of right, enjoin said company so proceeding with the construction of its road till such damages are ascertained and paid; for section 9 of article III of our constitution, while it gives a right in such case to recover of a railroad company such dam-

ages in an action at law, does not give a right to such injunction, as it does not require in such case that the damages should be paid or secured in advance of the construction of the road.' This doctrine was approved and reiterated in the *Arbenz Case.* The only qualification of the rule is that announced in the case of *Mason* v. *Bridge Co.,* 17 W. Va. 396, that, under peculiar circumstances, as where the property injured is entirely destroyed in value as effectually as if it had been actually taken by the railroad company in constructing its road, and the property is thereby virtually taken, the owner of the property may enjoin the company from proceeding with the building of its road until his damages are ascertained and paid or secured. But this case does not fall within this exception to the rule, as clearly appears from the averments of the bill as well as from the facts disclosed by the evidence in the case.

For the reasons aforesaid, the decree of the circuit court, perpetuating the injunction, must be reversed, the demurrers to the bill sustained, the injunction dissolved and the bills dismissed, and the defendants must recover their costs in the court below was well as in this Court.

*Reversed.*