# CHARLESTON.

WALLACE V. CHESAPEAKE & OHIO RAILWAY COMPANY.

Submitted December 2, 1913.   Decided December 9, 1913.

1. EMINENT DOMAIN—*Railroads in Streets—Damages to Adjoining Property—Liability.*

    Where a railroad company, for its corporate purposes, constructs and continuously operates a spur track through a public street as ostensible owner, it will, in absence of evidence to the contrary, be held the real owner, and liable for damage caused thereby to abutting property; although at the time of construction another corporation held a municipal franchise therefor, assigned to the railroad company before trial of an action for such injury. (p. 348).

2. SAME—*Construction and Operation—Injury to Realty—Declaration —Variance—Description of Property.*

    Where, in an action for injury to real estate, the lot injured is in part defectively described by location, yet if the declaration, when read in its entirety, substantially locates it as proved, the variance, if any, is immaterial, and neither party is prejudiced thereby. (p. 349).

Error to Circuit Court, Cabell County.

Action by Ida R. Wallace against the Chesapeake & Ohio Railway Company.   Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Enslow, Fitzpatrick, Alderson & Baker,* for plaintiff in error.

*George J. McComas and Isbell & Perry,* for defendant in error.

LYNCH, JUDGE:

Ida R. Wallace was in 1906 the owner of a lot located at the corner of Oley avenue and 24th street in the city of Huntington.   Under the authority of a franchise granted to the Globe Foundry Company, the Chesapeake & Ohio Railway

Company in .that year constructed on said street and avenue a spur track from its main line to the property owned by the foundry company. After completing the constructive work and equipment, it began to operate the spur, and since has continued to operate it whenever and as its convenience required.

Alleging ownership of the lot and injury to it by the defendant in the construction and operation of the track, plaintiff brought this action to recover compensation in damages for the injury. By writ of error to the judgment on the verdict in her favor, the defendant challenges the propriety of certain rulings of the trial court.

As one ground for reversal, the railroad company insists upon an alleged variance between the location of plaintiff's lot as averred and its location as shown by the proof. By the declaration the location, as defendant claims, is fixed at the intersection of First avenue and 24th street, while from the proof it appears that the true location is at the intersection of Oley avenue and 24th street. But, when the declaration is read in its entirety, the absence of a material variance is manifest; because, in addition to the description as to location, there is the further averment, with which the evidence does not conflict, that the lot is "lot No. 4 in block No. 4 of the Huntington Land Company's subdivision known as Eastwood, a map of which, supplemental to Leete's revised map of the city of Huntington, was filed in Cabell county court clerk's office", "being a corner lot upon which the plaintiff has a valuable residence or a valuable frame dwelling house", and "which lot and residence the plaintiff hath long been using and occupying and enjoying as a home and residence for herself and family". The deed of grant from the land company to plaintiff, to which the declaration refers, describes the lot with the same particularity by lot and block numbers, its situation in Eastwood, the map on which is located, the name of the engineer who made it, and the place of recordation. Besides, plaintiff testified that the lot injured and the lot conveyed by the deed is the same lot described in the declaration, and no other witness contradicts her statement. Thus, whatever misdescription by location may appear in the declaration when viewed only in the light of one averment, yet, when

viewed in its entirety, as properly it should be, it becomes manifest that no variance exists. Even a cursory examination of the declaration would advise defendant of the actual location of the lot in question. Defendant was not, and could not have been, misled. Nor does it appear possible that it may hereafter in anywise be prejudiced in its defense in any other litigation with plaintiff in relation to this or any other lot now owned by her, if indeed she owns any other. It knew, or by the exercise of a reasonable degree of diligence it could readily have ascertained, the identity of the lot described in the declaration with that as to which witnesses testified on the trial. There was no such misdescription as would or could mislead. The general averment of location at the intersection of First avenue and 24th street did not have that effect, when considered in connection with the further detailed description averred. There is, therefore, no merit in this assignment.

By its second assignment, the defendant seeks to exonerate itself from liability on the ground that, as the franchise was granted to the Globe Foundry Company, it, and not the defendant, is the real wrongdoer, and should therefore respond in damages for the injury. In support of this contention, defendant cites *Guinn* v. *Railroad* Co., 46 W. Va. 151. That case holds, it is true, that if "a railroad company builds its road in a street, and thereby injures access to and damages a lot abutting on the street, such damage is original and permanent, and the company building the road is liable, but a company subsequently leasing and operating the road is not liable, therefor". But it must be observed, as appears from the evidence, that the foundry company did not build, equip or operate the track. In fact, because of insolvency, it did not even construct or operate its own factory, for whose convenience, but not for whose ownership or exclusive use, it may be inferred, the track was constructed. So far as otherwise appears, its only assets at the date of insolvency were some lots and the 24th street franchise, the latter of which it assigned to the defendant in 1910, before the trial of this action. On the contrary, the defendant did all the constructive work, furnished all the labor and material necessary for the construction, and all the rolling stock and equipment, and

from the completion of the track continuously operated it in connection with its main traffic lines as and whenever its necessity or convenience required, either for the passage or storage of cars. A former superintendent of defendant's Huntington division, referring to the spur track, says: "It was constructed to be used by the Chesapeake & Ohio Railway Company". The railway company obtained the city grades and elevations on the street so occupied, preparatory to grading the street. Title to that part of the property on which the track was laid, approaching 24th street, was acquired by defendant for its use in the construction of the switch. These facts readily distinguish this case from *Guinn* v. *Railway Co.*, and, as we think, show liability on defendant for injury to plaintiff's lot due to its acts.

Although a careful search leads us to no authority discussing a similar situation, the conclusion seems reasonable that where, as in this case, a railroad company, at its own expense and for its own purposes, furnishes the labor, material and equipment necessary for the construction and operation of a spur track through a street, and completes and thereafter continuously operates the same as ostensible owner, it will, in the absence of proof to the contrary, be deemed the real owner, and, as such, liable in damages for injury to abutting property to the extent of the depreciation caused by such construction and operation, although at the time of construction another corporation held a municipal franchise therefor. This holding is in accord with that in *Coe* v. *Railway Co.*, 31 N. J. Eq. 105, 139, somewhat in point, that where "a railroad company permitted its charter to be used for purposes of condemnation of lands for another company's road, and on the location of the latter, which paid and took title in its own name for the land, and built the road, the road was the property of the latter company"; and that where "a railroad company, having located its road, permitted another company to locate its road on the same location and to build its road upon it, the former thereby relinquished its right to the location". Thus, that case tends to strengthen our conviction of the propriety of the holding indicated. All the facts before us warrant the presumption that the foundry company ac-

quired the franchise solely to permit defendant to do what it has done, and thereafter to pass by assignment to defendant title to the franchise, as in fact it subsequently did, as heretofore stated.

Finally, defendant assigns as erroneous and prejudicial the trial court's refusal to give certain instructions, numbered 1, 2, 5, 6, 10, 11 and 12, requested by it. Number 1, being mandatory, was properly refused, in view of the facts proved upon the trial; number 2, because not in accord with the principles announced in *Spencer* v. *Pt. Pleasant*, 23 W. Va. 406; *Fox* v. *Railroad Co.*, 34 W. Va. 466; *Stewart* v. *Railroad Co.*, 38 W. Va. 438; *Guinn* v. *Railroad Co., supra; Watson* v. *Railroad Co.*, 49 W. Va. 528. It would have told the jury that no liability rested on the company if the track was built according to the regulations prescribed by the city of Huntington and under the supervision of the city's engineer. It matters not, under the cases cited, how skillfully the work was done, one the value of whose property is thereby diminished may recover compensation therefor. He "may recover damages necessarily resulting from the ordinary and proper use by the railroad company of its track on such street, and may give evidence developing the character of this ordinary and proper use and how it affects the value of his property". *Fox* v. *Railroad Co., supra.* "Where a railroad is laid down in a public street, the abutting property is damaged, within the meaning of §9, article 3 of the constitution, to the extent of the depreciation caused by the construction and operation of the road". *Stewart* v. *Railroad Co., supra.*

Instructions 5, 6, 10, 11 and 12 were properly refused; because they ignore actual construction and operation by the defendant, with which the foundry company was in nowise related, except the mere naked fact that it had the franchise; and for the additional reason that, from no proof or other circumstance, does it appear that the switch was built by or for the latter company.

The refusal of number 7 was likewise proper, under *Kay* v. *Glade Creek Co.*, 47 W. Va. 467, 474, and 3 Elliott on Railroads, §996. The author cited says: "The danger from fire emitted from the locomotives, the increased cost of insuring buildings and their contents, * * * have been held proper sub-

jects for compensation in damages". Mills, Em. Dom. §163. Defendant does not urge, in argument, reversal for refusing any other instruction. It does not now even complain of number 7.

Being of opinion, therefore, that the trial was fairly conducted, the jury properly instructed, and the verdict sustained by the evidence, we affirm the judgment of the circuit court.

*Affirmed.*