# CHARLESTON

## Clayton v. County Court.

Submitted June 9, 1905. Decided November 7, 1905.

1. Eminent Domain—*Compensation—Remedy of Property Owner—Injunction*,

   Injunction lies against a county court to prevent it from taking private property for a public road, without having paid, or secured payment of, compensation therefor. (p. 260).

2. Eminent Domain—*Determination of Title.*

   A controversy as to the title of the property so taken, or sought to be taken, turning on the construction of plaintiff's deed, constitutes no obstacle to such jurisdiction, and the court may determine in such case the question of title by construing the deed. (255).

3. Deed—*Construction.—Parol Evidence.*

   When ambiguity in the terms of a deed renders the meaning uncertain, parol evidence of the conditions under which it was exe

cuted and the character and situation of the property may be considered in connection with its terms in arriving at the intention of the parties, which is the test by which to determine its legal effect. (p. 257).

4.   DEED—*Construction.*

In construing a deed, words which are repugnant to, and irreconcilable with, other terms clearly applicable to admitted and established facts recited in the deed must be rejected and all other words must be given some effect.   (p. 259.)

5.   DEED—*Private Road—Property Conveyed.*

When a deed conveys a tract of land and gives to the grantee, as an appurtenance thereof, the right to open and use a private road along one side of it, it will be presumed that the grantor did not intend to retain a very long and narrow strip of land between the tract conveyed and the road so provided for; and, when such road is described as intended to run between the tract of land conveyed and an adjacent tract belonging to a third party, it will be presumed, in the absence of anything on the face of the deed, or in the circumstances and situation and property, indicating the contrary, that the grantor did not intend to retain a strip of land between the road and the lands of such third party, so narrow as to be of no practical use to him.   (p. 260.)

6.   BOUNDARIES—*Description.*

When a road so designed and provided for is described as an extension of an existing road, lying between a portion of the land conveyed and a lot belonging to R., so as to run between the land conveyed and a tract of land belonging to O., and at the corner of the lands of R. and O. there is a slight angle, made by their lines running to the corner from nearly opposite directions, the road will follow said two lines and have, at the corner aforesaid, a corresponding angle, notwithstanding the deed, calling for one of the lines of the road as a boundary of the land conveyed, describes that boundary as a single line between two monuments, and as running with "line of alleys." In such case, the use of the word "alleys" will be deemed to refer to the old road, as one alley, and to the extension thereof, as another, and to signify intent to locate the road and the boundary line so as to run with the lines of the two adjacent tracts of land, and leave, between the tract conveyed and the adjacent lands, only sufficient space for the road.   (p. 258).

7.   EASEMENTS—*Private Road.*

A deed which calls for the line of a private road as a boundary of the tract by it conveyed, and gives to the grantee the right to open and use such road, does not pass to the grantee the title in fee to any part of the road.   (p. 261).

8.   EMINENT DOMAIN—*Compensation—Injury to Easement.*

When a private right of way is enlarged into a public road by the joint action of the owner of the fee and the public authorities, the

easement or right of way is neither injured nor destroyed, and no right to compensation or damages on account thereof accrues to its owner.  (p. 262).

Appeal from Circuit Court, Gilmer County.

Action by Dora A. Clayton against the County Court of Gilmer county.  From a decree perpetuating a preliminary injunction, defendant appeals.

*Modified and affirmed.*

L. H. Barnett and R. F. Kidd, for appellant.

A. L. Holt, and Hamilton & Morris, for appellee.

Poffenbarger, Judge :

Dora A. Clayton obtained a preliminary injunction against the county court of Gilmer county, restraining it from taking and interfering with a portion of a certain piece of land, belonging to her and certain rights of way appurtenant thereto, which injunction was afterward made perpetual and said County Court has appealed from the decree by which the court refused to dissolve the injunction and perpetuated it.

The object of the injunction was to prevent the establishment and maintenance of a public road on the land in question, on the ground that the plaintiff, having title thereto, could not be deprived of it until compensation therefor had been paid or secured to her, and on the further ground that the order establishing said road was invalid, because made at a special term, the notice of which did not specify the establishment of said road as one of the purposes for which said term was called.  The County Court, in its defense, asserted that the road was not located upon any portion of the plaintiff's land, but upon a strip of land, described as an alley, belonging to S. H. Whiting, adjacent to complainant's land and over which she had a private road or way, by virtue of an express grant thereof in her deed from Whiting from whom she had purchased the land to which this private way was appurtenant.

On the 24th day of May, 1902, two deeds were made by which this alley seems to have been created or provided for. One was made between S. H. Whiting and wife, parties of the first part, W. D. Whiting and wife, parties of the second part, and D. U. O'Brien and wife, parties of the third part, effectuating two or three exchanges of land among the parties.  Either by these, or some other one, Mellie O'Brien,

wife of D. U. O'Brien, obtained title to a tract of land lying adjacent to a certain other tract owned by S. H. Whiting, and this deed gave to S. H. Whiting the use, for himself and his vendees, of a 16 foot road, formerly provided for and possibly opened, which came up to the corner of the two adjacent tracts of S. H. Whiting and Mellie O'Brien. The other deed was from S. H. Whiting to Dora A. Clayton and conveyed to her the Whiting land lying adjacent to that of Mellie O'Brien and on the south side thereof, except the said alley, which was left between them. The quantity thus conveyed was estimated to be four acres and the deed conferred upon the grantee, Dora A. Clayton, "the right to open, make, maintain and use for herself and vendees the 16 foot road described in deed between the grantors herein and W. D. Whiting, bearing date herewith and the right to extend the said road with like privileges between Mellie O'Brien's lot and the lot hereby conveyed and the said road to run between the said two lots the full length of the lot herein conveyed." The extension so contemplated is mentioned in the description of the land conveyed as a 16 foot alley. The description reads as follows : "Beginning at a stake, corner to 14 foot alley and running thence N. 28¼ E. 275.8 feet to a stake; N. 22¼ E. 104.5 feet to a stake; N. 54½ W. 400 feet to a stake above the old sheep shed; S. 28¾ W. 485.6 feet to a stake at 16 foot alley; thence with line of alleys, 70¾ E. 406.6 feet to the beginning, containing 4 acres, by surface measure." The beginning corner, corner to 14 foot alley, is well established by the evidence. If there is any evidence against that location as the beginning corner, it is so slight in quantity and light in character as to be not worthy of notice. Commencing there and following the calls of the deed, the closing line intersects the first line at a point within the beginning corner several feet. This is due to an error in the course of that line as described in the deed which should have been, if a straight line to the beginning corner was intended, S. 68½° E. instead of S. 70¾° E. The surveyor accounts for this discrepancy by saying he did not ascertain the course, but took it for granted that it was the same as the line of Mellie O'Brien, and that the course of her line was S. 70¾° E. Mellie O'Brien's land, or the part of it fronting on the alley, was then under fence so that the location of her line was ap-

parent and its course easy of ascertainment.   If the intention was to leave the 16 foot alley or road, and nothing more, between the two tracts of land, the road could not run from the beginning corner clear through without an angle at a point some distance west of the beginning.   The 16 foot road already provided for, the extension of which was contemplated, ran past the beginning corner of the Dora Clayton land, probably a hundred feet or more, how far is immaterial, up to the corner of the O'Brien land, following the line of a lot known as the Riddle lot.   At that corner, the division line between the O'Brien land and the Whiting land purchased by Mrs. Clayton took a course slightly different from the line between the Riddle lot and the Clayton land so that an angle at that point in the road became necessary, if the intention was to leave a strip no more than 16 feet wide between the Clayton lot and the O'Brien lot, and the last line of the Clayton lot could not be a straight line. It was necessary to make an angle in it to correspond with the angle at the corner of the Riddle and O'Brien lots, so that her line would run S. 68½° E. to that point and thence S. 74½° E. to the place of beginning.

Assuming that, upon a proper construction of the Clayton deed, her line would be straight from the stake at the 16 foot alley to the beginning point, the County Court opened its road along that line on the south side thereof.   If that be a proper construction of the deed and the deed does not confer title to any part of the alley, then no part of her land has been taken.   But if, under a proper construction of that deed, the alley is not straight, but runs with the Riddle line to the O'Brien corner and then with the O'Brien line, the road is built partly on the Clayton tract.   It takes a triangular strip ascertained to be from four to seven feet broad at the widest point.   The course called for on the line in dispute S. 70¾° E. must be discarded for the reasons, that, the survey cannot be closed without discarding it or lengthening the 485.6 foot line so as to throw the last corner over in the inclosed land of Mellie O'Brien.   Under such circumstances, the rule is to ignore the course and close the survey by a straight line between the two corners.   *Ruffner* v. *Hill*, 31 W. Va. 428, 438.   Palpably erroneous and irreconcilable calls for course and distance may always be rejected and the survey closed

by lines run according to the established monuments. *Teass* v. *St. Albans,* 38 W. Va. 1; *Wendell* v. *Jackson,* 22 Am. Dec. 635; *Myers* v. *Lodd,* 26 Ill. 415; *Vose* v. *Bradstreet,* 27 Me. 156; *Kruse* v. *Wilson,* 79 Ill, 233; *Bond* v. *Fay,* 12 Allen (Mass.) 86; *Seaman* v. *Hogeboom,* 21 Barb. (N. Y.) 398; *Eggleston* v. *Bradford,* 12 O. 312; *Hull* v. *Foster,* 7 Vt. 100. If nothing in the circumstances disclosed by the evidence in the case and the deed exhibited with the bill, and under which the plaintiff claims, militated against the operation of this rule, the deed would have to be so construed; but it says the road is to be extended between the two tracts of land and describes it as a 16 foot alley, and the last line of the Clayton tract is described thus : "thence with line of alleys," to the place of beginning, not with the line of one alley, but with the line of *alleys,* and the two deeds mentioned and described herein, as well as all the testimony in the case, shows that there were in point of fact two of these 16 foot roads, one between the Clayton land and the Riddle land which the parties intended to extend between the Clayton land and the O'Brien land, and which could not be extended without making an angle at the Riddle and O'Brien corner. Strictly speaking, the alley as adopted by the County Court is not an extension of the sixteen foot road first mentioned. It begins back a hundred feet or more at the intersection of a fourteen foot alley with the sixteen foot road and put the old sixteen foot road partly on new ground from that point, instead of commencing at its terminus at the Riddle and O'Brien corner. A circumstance tending strongly to support this view is the fact that any strip intended to be left, either between the road and the O'Brien land, or between the Clayton land and the road, would have been in quantity as well as in form useless to anybody except Mrs. Clayton or Mrs. O'Brien, but would belong to Whiting. What purpose could he have had in retaining a triangular strip more than 400 feet long and not more than seven feet broad in the widest part between Mrs. O'Brien's land and the road? It is not to be supposed for a moment that he retained this strip between the road and Mrs. Clayton's land, for it would be unreasonable and absurd to suppose that she would accept the deed under such circumstances. Was there to be but one point at which she could reach the road, the use of which was granted to her? Was

she to be limited to a mere way of necessity to the road over this strip retained by Whiting? On the other hand, did he propose to cut Mrs. O'Brien off from the road by retaining such a strip? Of what earthly use could it be to him except a means of forcing Mrs. O'Brien to purchase a right of way through him or purchase the land? This is not to be supposed or assumed because their relations seem to have been friendly and their efforts to have been directed along the same line. In a deed, to which Mrs. O'Brien and Whiting were both parties and in which exchanges of property were made, and bearing even date with that of Mrs. Clayton, the 16 foot road is mentioned, and it is quite likely that, if she had suspected any such intention on the part of Whiting, she would have provided against it in this deed. To break the force of these circumstances and the terms of the deed, plainly disclosing intent on the part of the grantor to leave only a sixteen foot road between the two tracts, the County Court relied upon a plat of other lands showing the sixteen foot road up to the O'Brien and Riddle corner with a dotted line on the north side thereof, indicating, in their opinion, a purpose to make the angle at the fourteen foot road instead of at the Riddle corner. But the surveyor who made the plat says the dotted line was not run but that the straight line on the south side of the sixteen foot road, disclosing the opposite intent, was run, and according to that line Riddle holds his lot, and not according to the dotted line. The evidence of intent afforded by this plat is entirely too slight to overcome the weighty evidence above referred to. Hence, the conclusion is that the sixteen foot road, following the Riddle line up to the O'Brien corner and then the O'Brien line to the end thereof, was intended; that the line of the Clayton tract follows the north side of said sixteen foot alley; and that a portion of the road, as opened by the County Court, is clearly on the land of the complainant.

Intention of the parties to a deed is the test by which to determine its legal effect; and this rule applies to the description as well as to other parts of the instrument. When ambiguity in the terms used renders the meaning uncertain, resort may be had to the circumstances and conditions under which the deed was executed. Dev. Deeds §§ 839, 840. "Although parol evidence is not admissible to prove that the

parties intended something different from that which the written language expresses, or which may be the legal inference and conclusion to be drawn from it, yet it is always competent to give in evidence existing circumstances, such as the actual condition and situation of the land, buildings, passages, watercourses, and other local objects, in order to give a definite meaning to language used in the deed, and to show the sense in which particular words were probably used by the parties, especially in matters of description." Chief Justice Shaw in *Salesbury* v. *Andrews*, 10 Pick. (Mass.) 250, 252. "Generally, it will not be presumed that a party granting land intends to retain a long narrow strip next to one of his lines." *Western M. & M. Co.* v. *Cannel Coal Co.*, 8 W. Va. 406. It is presumed that he does not, unless an intent so to do is manifest. *Idem. Brown Oil Co.* v. *Caldwell*, 35 W. Va. 95, 99. Repugnant and impossible words are to be discarded and every other word given some effect, and the deed reconciled to admitted and established facts and circumstances. The conclusion above expressed accomplishes this and no other one will do it. Making an angle in the line in controversy violates no rule. "Law will not declare in favor of straight line between monuments, when the language of the deed shows that a different line was intended." *Pratt* v. *Woodward*, 91 Am. Dec. 573. This must be especially true when the language, importing intent to the contrary, is aided by circumstances.

In so far as the injunction prohibits the maintenance of the road on said triangular strip shown on plat No. 2, filed with the deposition of R. L. Ruddell, the court below properly overruled the motion to dissolve and perpetuated it. The jurisdiction in equity to prevent the taking of private property for public purposes without payment of compensation therefor, or security for the same having been given, is undoubted and not disputed in this case. *Foley* v. *County Court*, 54 W. Va. 16.

Mrs. Clayton claims one-half of the alley, upon the theory that, as it is made the boundary line of her property, the conveyance carries title in fee to one-half of the alley. For this she relies upon the general rule that, where a public highway or a stream not navigable is made a boundary of the tract conveyed, the line is in the middle of the highway or

stream.   Hutchinson Land Titles, p. 292, citing a large number of authorities; Devlin on Deeds, § 1024, giving a long list of decisions.   In this assumption, her counsel has overlooked the fact that the deed does not make the alley, but only the lines thereof, a boundary of her land.   If this alley were a public highway, she could not claim to the center of it under a deed, showing an intent that the line of the alley, and not the alley itself, should define the limits of her land. *Lough* v. *Machlin*, 40 O. St. 332; *Insurance Co.* v. *Stevens*, 87 N. Y. 287; *Lee* v. *Lee*, 27 Hun. 1; *Railroad Co.* v. *Heisel*, 38 Mich. 62; *Smith* v. *Slocomb*, 9 Gray (Mass.) 36; *Brainard* v. *Railroad Co.*, 12 Gray (Mass.) 407; *Murphy* v. *Copeland*, 21 Iowa 515. *Hanson* v. *Campbell's Lessee*, 20 Md. 223; *Perrin* v. *Railroad Co.*, 40 Barb. (N. Y.) 65; *Cottle* v. *Young*, 59 Me. 105.   In all such instances, the title to the fee in one-half of the street, road or stream stands upon the presumption that the grantor did not intend to retain the narrow strip between the street or road line or bank of the stream and the middle thereof; but this presumption cannot exist when there is anything on the face of the deed indicating a contrary intention, and the authorities universally hold that when the deed says to the line of the street or the bank of the stream, the line, and not the road or stream, is the boundary and the deed carries nothing beyond the boundary line except the easement and rights appurtenant to property abutting upon a public highway.   Devlin on Deeds, § 1025.   As to which lines of the alley were intended, north lines or south lines, there is but one answer.   If the south, what need was there for the grant of a right of way to Mrs. Clayton.   If the south, she took title to the whole of the alley and needed no permission to use it.   If the north, she took no title to it, and her convenience demanded a road along the side of the land she bought.   This is the only interpretation consistent with the terms of the deed.

A further contention is that the easement in and over the alley, vested in Mrs. Clayton by her deed, will sustain this injunction, as to the alley, as well as in respect to the strip of land belonging to her and not included in the alley.   It is difficult to see how this claim can be supported in view of the many decisions of this Court which hold that an injunction does not lie to prevent mere damage to property, by a work

of internal improvement, authorized by law, unless it be so great as to amount to a taking thereof.    *Watson* v. *Railway Co.*, 49 W. Va. 528; *Arbends* v. *Railway Co.*, 33 W. Va. 1; *Spencer* v. *Railway Co.*, 23 W. Va. 406; *Mason* v. *Bridge Co.*, 17 W. Va. 396. In such case an action at law for the damages to the property is deemed adequate to protect and vindicate the right of the abutting property owner.    In the cases referred to, the easements involved were such as an owner, whose property abuts upon a highway, has in the highway, but this is an important and valuable easement or right distinct from the public easement.    *Pence* v. *Bryant*, 54 W. Va. 263.    But, as invalidity of the order establishing the road is advanced as another basis for the injunction, another conclusive reason for the untenableness of the position taken by counsel for the appellee in respect to the easement will be given.    No compensation can be had where there is no injury.    If property is not taken, no compensation for it can be demanded and if it is not injured, there can be no claim for damages.    The transformation of this private road into a public highway neither destroys nor injures the easement.    It amounts only to an enlargement of the use to which the land is subjected by the deed.    By that instrument, the use of it for purposes of ingress and egress is given to the grantee and her tenants.    When it is converted into a public highway, she and her tenants still have that use of it and are in better position, because the public authorities maintain and keep it in repair.    As to whether the owner of such an easement is entitled to compensation, when the land is taken for the purposes of a public highway, not much authority has been found, but such as there is plainly indicates the contrary.    *Murphy* v. *Bates*, 41 Atl. Rep. 1011, propounds the doctrine that a private way becomes merged in the public way when both are upon the same ground.    To the same effect is *Ross* v. *Thompson*, 78 Ind. 90.    The authorities do not seem to deem it necessary to proceed against anybody but the owner of the fee in enlarging the private way into a public way.    Elliott on Roads, § 5.    *Abbott* v. *Stewartstown*, 47 N. H. 228.    Though merged in the public use, the easement is not destroyed, for discontinuance of the highway works a dissolution of the merger and leaves the easement still in the hands of its owner.    *Pence* v. *Bryant*, 54 W. Va. 263; *Hol-*

*loway* v. *Southmayd*, 139 N. Y. 390; *Showalter* v. *Railway Co.*, 49 Kas. 421; *Challis* v. *Railroad Co.*, 45 Kas. 398; *Railroad Co.* v. *Patch*, 28 Kas. 470.·

Agreeably to the foregoing conclusions the decree will be so modified as to limit its operation and effect to so much of the land included in the road, mentioned and described in the bill and proceedings, as lies within the limits of the plaintiff's deed as herein construed and given effect, and, as so modified, the same will be affirmed and costs in this Court decreed to the appellant, as the party substantially prevailing.

*Modified and affirmed.*