# CHARLESTON.

STATE v. J. B. SNYDER *et als.*

Submitted April 12, 1921.   Decided April 19, 1921.

1. APPEAL AND ERROR—*Decree Adverse to Petitioners for Sale of Land for School Fund May be Appealed from by Them.*

   A decree in a suit brought for the purpose of selling lands for the benefit of .the school fund, entered upon- a petition properly filed in said suit, which determines adversely to the petitioners the questions raised by them, may be appealed from by such petitioners.   (p. 460).

2. PUBLIC LANDS—*To Sell Forfeited or Unappropriated Lands for School Fund, State Must Locate Them with Reasonable Certainty.*

   It is the duty of the state, in a suit brought under chapter 105 of the Code to sell forfeited or unappropriated lands for the benefit of the school fund, to locate the lands proposed to be sold with reasonable certainty.   (p. 461).

3. SAME—*Land to be Sold for School Fund Must be Located with Such Certainty as to Enable Claimants to Determine Whether Their Lands are Within the Tracts to be Sold.*

   Where in. such suit a petition is filed in which it is averred that the petitioners are the owners of lands within the boundaries of the tracts proceeded against as the same are commonly known, but that such boundaries are not definitely fixed upon the ground, and that because of this fact the petitioners are unable- to determine to what extent a sale of said tracts of land will cast a cloud upon the title to their lands, the court should require the commissioner of .school lands to locate the lands proposed to be sold with such certainty as to enable adverse claimants to determine whether or not the lands claimed by them are within the boundaries proposed to be sold.   (p. 461).

Appeal from Circuit Court, Randolph County.

Suit by the State against J. B. Snyder and others to sell land for the benefit of the school fund.   Judgment for plaintiffs, and certain defendants appeal.

*Reversed and remanded.*

*Talbott & Hoover,* for appellants.

*E. T. England,* Attorney General, and *Charles Ritchie,* Assistant Attorney General, for the State.

RITZ, PRESIDENT:

This suit was instituted for the purpose of subjecting to sale for the benefit of the school fund two tracts of land, described as Barton lots Nos. 9 and 10, located in Mingo district, Randolph county, each supposed to contain two thousand acres.

The bill alleges that suit had been instituted in said Randolph county by George MacIntosh against Richard W. Barton's heirs and executor, in which suit a decree was entered on the 8th day of May, 1868, appointing one David Goff, Commissioner, to sell the lands of which Richard W. Barton died seized; that the said Goff did sell to Harman Snyder what is described as Barton Lots Nos. 9 and 10 and conveyed the same to him by a deed dated the 9th of July, 1874; that said lots are supposed to contain two thousand acres each; that lot No. 10 has become forfeited to the State of West Virginia by reason of not having been assessed with taxes in the name of said Harman Snyder, his heirs or assigns, from the year 1870 to the year 1914, both inclusive; that the said lot No. 9 was assessed to the said Harman Snyder as two thousand acres from the year 1870 up to and including the year 1882; that beginning with the year 1883 said lot No. 9 was assessed to the said Snyder as a four hundred-acre tract, and continued to be so assessed up to and including the year 1896; that for the years 1897, 1898 and 1899 said Harman Snyder was assessed with the four hundred acres of land in Mingo district by a wrong description, to-wit, as lot No. 2, instead of lot No. 9, and that since the year 1900 no taxes have been assessed against nor paid upon said lot by the said Harman Snyder, his heirs or assigns. The averment is that 1600 acres of this lot No. 9 became forfeited for failure to enter the same upon the land books since the year 1882, at which time the change was made from 2000 acres to 400 acres, as above indicated, and that the 400 acres so entered upon the land books was returned delinquent for the non-payment of the taxes assessed against the same for the year 1899, and was sold and purchased by Lakin, DeBerry & Company, who procured

a deed from the clerk of the county court therefor; that the said 400 acres so purchased by said Lakin, DeBerry & Company in the year 1910 was returned delinquent for the non-payment of taxes thereon and purchased by the State, for which reason it is averred both of said lots 9 and 10 are now subject to sale for the benefit of the school fund. The heirs-at-law of Harman Snyder and Lakin, DeBerry & Company are made defendants as claimants of said lots 9 and 10.

The cause was referred to a commissioner for the purpose of ascertaining whether or not said lands were forfeited, and if so the amount of taxes, interest, etc., properly chargeable against the same, and who, if any one, is entitled to redeem the same from the forfeitures aforesaid. The commissioner made a report from which it appears that said lots are forfeited as set up in the bill. He also reported the amount due the state for the unpaid taxes upon the same.

In this cause H. E. Snyder filed an answer averring that he had title to two tracts of land containing 188 acres and 65 acres, and setting up in said answer the evidence of such title, and claimed that the same was superior to the title which it was claimed was forfeited and belonged to the state. Sophronia E. Hutton also filed a petition showing that she was the owner of two tracts of land lying within Barton lots 9 and 10, one containing 572 acres, and the other 1020 acres, adjoining each other, and also exhibited proof of her title, and averred that it was superior to the title forfeited to the state, if any such title was forfeited, and asking that her said lands be dismissed from the proceeding. Daniel R. Baker also filed a like petition claiming 450 acres of said land by a superior title. The circuit court entered a decree directing a sale of said Barton lots 9 and 10, excepting from the sale, however, the land described in the petitions of Daniel R. Baker and Sophronia E. Hutton, and in the answer of H. E. Snyder, holding that these lands were not forfeited.

The said lots were advertised for sale in accordance with the decree, and the same sold by the commissioner of school lands. This sale, however, was not confirmed because of an upset bid. Upon a resale of the lands under the same conditions, and upon the incoming of the report of this resale, and

before its confirmation, W. D. Russell and a number of others filed a petition in the cause in which it is alleged that each of the petitioners are the owners of tracts of land lying in Mingo district in Randolph county, and within the boundaries of what is known as Barton lots 9 and 10; that their titles are superior to the titles forfeited to the state; that Barton lots 9 and 10 have never been located upon the ground; that they are unable to tell to what extent there is an interlock or an . interference between said Barton lots 9 and 10 and the lands claimed by them; that because of the uncertainty and indefiniteness of the description of said Barton lots 9 and 10, and the fact that the same are not located upon the ground, the school land commissioner should be required before proceeding further with the cause to locate the same by a survey; that in addition to the lands owned by them there' are many other persons living within what is commonly known as Barton lots 9 and 10, which persons have titles superior to that forfeited to the state; that neither the petitioners nor these other persons are able to set up their claims in this proceeding because of the indefiniteness and uncertainty as to the location of said Barton lots 9 and 10. Considerable evidence was taken to support the allegations of this petition, from which it appears that no one acquainted with the lands in this neighborhood knows the location of these Barton lots 9 and 10. There seems to be no known line or corner of either of said lots. The court upon this petition and evidence decreed that the petitioners might make such surveys at their own expense as they desired for the purpose of locating said Barton lots 9 and 10, and if, after such surveys are made it is found that their lands are within the exterior boundaries of the Barton lots that they may file petitions setting up their titles thereto, but that the commissioner of school lands would not be required to make any more definite location of the lands proceeded against than was made in the bill, and withholding the confirmation of the report of sale until the petitioners acted under said decree. It is from this decree refusing to require the definite location of the lands proceeded against by the plaintiff in this suit that this appeal is prosecuted.

It is first insisted by the state that the decree appealed from

is not an appealable decree; that it does not decide the principles of the cause but is entirely interlocutory. In one sense, of course, the decree appealed from is not final. It does not dispose of the rights of the petitioners, but it is not necessary that a decree be final in order to be an appealable decree. If it is a decree that settles the principles of the cause presented by the pleadings, under our holdings, it is such appealable decree. We have held that it is the duty of the state, before having a decree of sale of lands for the benefit of the school fund, to locate the same with reasonable certainty. *State* v. *Workman*, 77 W. Va. 728. One of the purposes of this requirement is, of course, that adverse claimants may know just what is proposed to be sold in the proceeding, so that they may intelligently assert their conflicting claims thereto. The purpose of the petition of the appellants in this case was to compel the plaintiff to meet this requirement. The court adjudicated this matter against the appellants and held that they were not entitled to have any more definite location made by the plaintiff, but gave them permission, at their own expense, to make such definite location. This was a complete adjudication of the matters involved upon these petitions. It, at least by implication, said to the plaintiffs, if you do not show affirmatively the location of the lands proposed to be sold, and that the same embraces the lands claimed by you in whole or in part, the sale reported by the commissioner of school lands will be confirmed, and the title to your lands clouded because of the uncertainty as to just what was sold by the commissioner of school lands. We are, therefore, of the opinion that inasmuch as this decree settled the principles upon which the cause should proceed, and all of such principles, that it is an appealable decree. *Wood* v. *Harmison*, 41 W. Va. 376; *Reed* v. *Cline*, 9 Gratt. 136.

It is further argued that the lands proceeded against are described in the proceedings with sufficient certainty; that the reference thereto as Barton lots 9 and 10 sufficiently locates them for the purpose of this proceeding. It is true these lots were conveyed to Harman Snyder by the description of Barton lots 9 and 10, each containing 2000 acres, but even if this was a sufficient description of the lands in the deed to Harman

Snyder, it does not describe the lands decreed to be sold in this cause. The decree excludes therefrom 188 acres and 65 acres belonging to H. E. Snyder; 572 acres and 1020 acres belonging to Sophronia E. Hutton; and 450 acres belonging to Daniel R. Baker. It will thus be seen that there is excluded from the two lots more than 2000 acres. These lands which are excluded are not located with any degree of certainty with reference to the said Barton lots 9 and 10. It is not indicated how much thereof comes out of lot 9, how much thereof out of lot 10, and how much of lot 9 is left, and how much of lot 10 is left, or what part of each of said lots. From the fact that there is a larger acreage excluded than is contained in either of said lots, it may be assumed that the decree of sale does not cover the whole of either of Barton lots 9 or 10, but only a part of each of said lots. What part? That was exactly the question that was involved in the case of *State* v. *Workman, supra,* where we held that before making sale the part so proposed to be sold must be located with reasonable certainty. The fact that these lots when offered by the school land commissioner only brought the sum of $650.00 is clear evidence of the necessity of a more definite and certain determination of the land proposed to be sold. No doubt it was because of the impossibility of determining from the record of the case just what a purchaser might get that a substantial bid was not made. The report of the commissioner made in this case shows that there are other claimants to this land than those made defendants to the bill, but that because of the uncertainty existing in the proceeding it is impossible to tell just who they are. Upon the incoming of this report, based as it was upon sufficient evidence, the court should have then required the commissioner of school lands to determine who these conflicting claimants were, and make them parties to the bill, or at least definitely locate the land so that a prospective purchaser would know just what the state proposed to sell, and could by making inquiries and an examination of the record determine what probability there was of getting good title to any of the lands. If the state, as a matter of fact, owns any land in these Barton lots 9 and 10 it should not dispose of the same without receiving reasonable compensation

therefor. It can only do this by showing to the purchaser what it does own, and what such a purchaser would likely get at such sale. The indefiniteness here is such that if this sale is confirmed the purchaser would have not the slightest idea of what he is getting. He may get a substantial boundary of land, or it may turn out that all of these lots are covered by conflicting superior titles, in which case he would, of course, get nothing. Then, too, because of the uncertainty as to the location of these Barton lots 9 and 10, the titles of all of the people owning lands within what is commonly believed to be the bounds of the same will be clouded and made uncertain. It is not the purpose of the state in a school land proceeding to embarrass the owners of real estate by casting clouds upon their titles. The purpose of such a proceeding is to dispose of the interest of the state and to derive therefrom for the benefit of the state school fund, the largest amount of money possible. This purpose can only be accomplished by requiring the officers charged with the execution of the law in this regard to define with some reasonable certainty the tracts of land which it is proposed to convey to the purchaser. When this is done prospective purchasers may then by an examination of the records, as well as by an examination of the boundary of land itself, have some conception of what will pass by a deed from the commissioner of school lands. We are of the opinion that upon the filing of the petition of the appellants here the court should have proceeded no further in the cause, and required the commissioner of school lands to locate the lands which it is proposed to sell with some reasonable degree of certainty, and if, after such location is made, the petitioners' lands are found to lie within the tracts so proposed to be sold they should be allowed to file their petitions showing their conflicting titles in order that the same may be adjudicated in this proceeding, and if superior to the title held by the state the proceeding dismissed as to their lands. Any other course could only result in innumerable suits between the purchaser at the school land commissioner's sale and such claimants, as well as in the state receiving an entirely inadequate price for its lands should it turn

out that there is a substantial boundary of lands to which it has the title.

We will, therefore, reverse the decree of the circuit court complained·of and remand the cause with directions to proceed as above indicated.

*Reversed and remanded.*