## CHARLESTON.

STATE v. BEAR MOUNTAIN COAL COMPANY et al.

(No. 5327)

Submitted May 12, 1925. Decided May 19, 1925.

1. TAXATION—*Presumption of Entry of Land for Taxation and Payment of Taxes in Favor of Owner and Persons Claiming Under Him Stands Until Overthrown by Proof to Contrary.*

    There is a presumption of entry of land for taxation and payment of taxes thereon in favor of the owner and persons claiming under him, which stands until overthrown by proof to the contrary. (p. 186.)

    (Taxation, 37 Cyc. p. 1167).

2. SAME—*State, Suing to Sell Forfeited Land for Benefit of School Fund, Must Show that Land Has Been Forfeited, and Identify and Locate with Certainty Particular Tract.*

    In a suit by the State to sell forfeited land for the benefit of the school fund, the State must show that the land has been forfeited, and identify and locate with certainty the particular land alleged to be forfeited. (p. 186.)

    (Taxation, 37 Cyc. p. 1553 [1926 Anno.]).

    NOTE:  Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.

Appeal from Circuit Court, Barbour County.

Suit by the State of West Virginia against the Bear Mountain Coal Company and others. From order confirming commissioner's report, defendants appeal.

*Reversed; bill dismissed.*

*Poffenbarger, Blue & Dayton,* for appellants.

*J. Blackburn Ware,* for the State.

WOODS, JUDGE:

William C. Snow, in 1900 and 1901, bought a number of tracts of coal in Elk and Pleasant districts, Barbour County, in his own name, though in fact acting as trustee for the Bear Mountain Coal Company, to which company he later transferred said property, amounting in all to 3134.8 acres. During the same period, Snow obtained an option on the Pittsburgh coal in and underlying a 123 acre and 40 pole

tract belonging to one Benjamin F. Stout. On Stout's failure to comply with the terms of the option, Snow brought suit, which resulted in a decree directing Fred O. Blue, as special commissioner, to make a deed for said coal. Said deed was executed April 10, 1903. In the year 1904, Stout was assessed on the land book with 123 acres and 40 poles of land in fee in Elk district, with the notation "Coal to William C. Snow," and for the same year said Snow was assessed with 123 acres and 40 poles, described as being in fee, with notation "From Benjamin Stout," and valued at $615.00 (being erroneous in so far as it included the land); that for the year 1905, said Snow was assessed with the coal on the 123 acre and 40 pole tract—actual measurement 104.8 acres (a complete severance from the realty) at $615.00, and Stout with 123 acres and 40 poles in land, with valuation $1,045.00, with notation "From William C. Snow." In 1906, there appears on the land book an assessment of 123 acres and 40 poles in the name of Benjamin F. Stout, with notation "Includes coal at $10.00 per acre," the assessed value being $3,540.00. There was, however, no assessment of the 104.8 acres of Pittsburgh coal in the name of said Snow for the years 1906 to 1920 inclusive. After the death of Snow, the Bear Mountain Coal Company discovered that this tract of 104.8 acres of coal had never been conveyed to them by apt deed from said Snow, and on January 17, 1921, Snow's widow and heirs, at the request of the coal company and knowing that Snow held merely the naked legal title to the coal, made a deed conveying this coal to said coal company. In 1921 this particular tract of coal was assessed as property of Bear Mountain Coal Company, but the same was not entered on the books in 1922 or 1923.

The Commissioner of School Lands instituted a suit under chapter 105, Code, to sell said 104.8 acres for forfeiture for non-payment of taxes thereon for the years 1906 to 1920, inclusive, and also 1922 and 1923. The Bear Mountain Coal Company, and others, answered, and the matter was then referred to one of the commissioners in chancery to determine whether or not said tract of coal was delinquent and forfeited.

The Bear Mountain Coal Company introduced Frederick L. Lemley, an attorney, who testified to having made an abstract of all the coal properties of the Bear Mountain Coal Company in Barbour County, and in making said abstract naturally looked to its assessment. He filed with his testimony "Lemley Exhibit No. 1," showing assessments against said coal company's properties for the years 1901 to 1920, inclusive. This chart shows that in 1905 (the last year that the 104.8 acres of coal were assessed to Snow), said company was assessed in Pleasants district with 2071.621 acres of coal and 20.35 acres of coal, or a total of 2091.971 acres; and was assessed in Elk district for the same year with 1063.1009 acres of coal and 23.10 acres of coal, or a total of 1086.2009 acres. The total acreage of both districts for that year amounted to 3178.1719 acres of coal. A. N. Humphreys, Jr., an engineer, testified that in the summer of 1905 he made a map of all the coal holdings of said company, including the 104.8 acres in controversy. The coal company claims that from this map it entered its coal holdings for taxation, in 1906, as totaling 3207.147 acres, or an increase of 28.9751 acres over the assessed acreage of the preceding year. This assessment for 1906, however, erroneously listed all the said coal property as situate in Pleasants district, in which manner it was carried until in 1913, when it was again divided according to districts. The Commissioner of School Lands, claimed that the 1906 assessment did not include the 104.8 acre tract, in Elk District, as there was no record or notation of the change on the land books. Lemley Exhibit No. 2, purports to show a detailed list of all properties coming into the appellant's possession since its organization. The total acreage of coal lands (49 tracts, including the 104.8 acre tract) amounting to 3184.25 acres, showing that at all times said company had paid in excess of the amount of acreage actually possessed.

This cause comes here on appeal from an order of the Circuit Court of Barbour County, confirming the commissioner's report, in this that the 104.8 acres of coal land was dropped from the books and not assessed for the years 1906 to 1920, inclusive, and 1922 and 1923, and that the amount due and

owing in taxes on said property on April 26, 1924, amounted to $2,540.06, and that the same is a lien upon said tract of coal. The Commissioner of School Lands contends that there is no notation on the books showing a transfer of the assessment to the Bear Mountain Coal Company; hence, the appellant must prove the change. The appellant claims that an omission must be shown by the appellee.

There is a presumption of entry of the land for taxation and payment of taxes thereon in favor of the owner and persons claiming under him, which stands until overthrown by proof to the contrary. *White Flame Coal Co. v. Burgess,* 86 W. Va. 16; *Wildell Co. v. Turk,* 75 W. Va. 26. In *State v. Workman,* 77 W. Va. 728, it is held: "In a suit by the State to sell forfeited lands for the benefit of school fund, the State must show that the land has been forfeited and identify and locate with certainty the particular lands alleged to be forfeited." Has the State borne the burden thus cast upon it? The answer of the defendant positively and directly denies the allegations of the bill wherein it is charged that the tract in question has been omitted from the land books, and becomes forfeited for non-entry. As we have shown all the presumptions of the law are that the defendant has complied with all the requirements of the statute concerning the assessment of his property. The presumption is against its forfeiture. Code, chapter 105, section 19.

The plaintiff maintains that the coal company has not complied with chapter 29, section 50, Code, in regard to the consolidation of its tracts of coal for assessment purposes. It appears in evidence that the coal company's properties have been assessed as a whole since 1901. In the absence of proof to the contrary the presumption obtains that the statute in this respect was complied with. The assessment records show that said coal company's coal was assessed from 1902 to 1905, inclusive, as 2091.971 acres in Pleasant District, and 1086.2009 acres in Elk District. It is an admitted fact that the 104.8 acres of coal was assessed on the property books to Snow in 1905. Its disappearance from the assessment roll in 1906 indicates an affirmative action of someone in regard to the assessment of this particular coal. This fact, taken in con-

nection with the proven act of the coal company in platting
its several tracts of land for the purpose of assessment under
the assessment law going into effect in 1905, as hereinbefore
set out, tends strongly to show its inclusion in the Bear Moun-
tain Coal Company's property which appeared on the tax
books in 1906, at the larger acreage of 3207.147 acres. The
engineer who made the plat in 1905, showing all of defend-
ant's coal holdings in Barbour County, testified to the fact
that the 104.8 acre tract was laid down on the map from
which he made his map. That this map of 1905 was made
for the express purpose of complying with the re-assessment
law of 1904, and entering the coal company's holdings for
taxation, is not contradicted. The abstract of the defend-
ant's properties in 1921, by Lemley, shows that the company
had 3184.25 acres of coal in Barbour County, and that the
tract of 104.8 acres was included in this acreage. The coal
company has paid taxes on 3207.147 acres since 1906. It
is seen that it has paid taxes in excess of its holdings. Lem-
ley testified that he found no evidence of the forfeiture of any
part of the coal company's holdings for the non-payment of
taxes. This testimony is not in contradiction or supplemen-
tary of the record, as appellee contends, but only goes to the
fact of whether the 104.8 acre tract was included in the
assessment in 1906. It goes to the identity of the land, and
is admissible. After the company holdings had been com-
bined for the purpose of assessment, it would only be neces-
sary to add to such combined acreage other tracts later ob-
tained. In the absence of any showing to the contrary, and
the affirmative showing in proof by the coal company, it seems
plain that the tract in controversy has been included in the
return of the company for taxation from 1906 forward. If
so, the fact that the legal title to the coal remained in Snow,
is not material. Snow being merely the trustee for the coal
company, an assessment in the name of the coal company will
prevent forfeiture, even though the legal title remained in
Snow. *Siers* v. *Wiseman,* 58 W. Va. 340. It is urged by
the appellee that the amount of the acreage upon which the
company paid taxes prior to 1906 was not increased to the
extent of 104.8 acres, in the assessment of 1906. This may

be accounted for in the revision of the coal properties in 1905, as testified to by the engineer. The question is, Was the tract in controversy included? The proof so shows. In *White Flame Coal Co.* v. *Burgess, supra,* Judge POFFEN-BARGER says: ''A claim of forfeiture is asserted on the bare fact that the acreage taxed as minerals is too small, or that there is an excess of acreage owned above the acreage taxed. This claim is equally unfounded. The Bruens caused their coal to be assessed as a single tract, agreeably to the fact. In the taxation thereof, there was an error as to the quantity. In such case, there is no failure to enter the tract of land or any part thereof for taxation, within the meaning of the law. *State* v. *Cheney,* 45 W. Va. 478; Desty, Tax. 567.''

Therefore, we reverse the decree of the circuit court, and dismiss the plaintiff's bill.

*Reversed; bill dismissed.*