State of West Virginia *v.* Ruth T. Edmunds *et al.*

(No. 7234)

Submitted May 4, 1932. Decided May 17, 1932.

317

*P. H. Murphy* and *Davis & Painter*, for appellants.
*Blue, Dayton & Campbell*, and *Clifford R. Oviatt*, for Carbide & Carbon Chemicals Corporation.

WOODS, JUDGE:

This is a suit under provisions of Chapter 105, Code 1923, to declare forfeited for non-entry for taxation for a period of more than five successive years that certain narrow strip of land, 600 feet in length lying between the Kanawha River and Kanawha Avenue, as shown on plat herein.

R. W. Edmunds, on March 6, 1918, acquired title to a four-acre tract from the Charleston Gun Club, a corporation, which he subdivided as shown on plat, the original tract extending from East Avenue on the south to the low water mark of the Kanawha on the north, including the irregular lots Nos. 29 and 30. Having in 1918 sold sixteen of the lots, viz. Nos. 1 to 15 inclusive and No. 30, Edmunds had himself assessed with the fourteen remaining lots for the year 1919, but did not enter the rectangle in direct prolongation and to the north of the one numbered 15. In 1920, he was not assessed with any of the Gun Club tract, having disposed of the remaining fourteen lots in 1919.

The heirs of R. W. Edmunds and Carbide and Carbon Chemicals Corporation were made parties defendant to the present suit, the former because the property is alleged to be delinquent in the name of R. W. Edmunds, and the latter by reason of its claim to same. The Edmunds seek to redeem, while the Carbide and Carbon Chemicals Corporation

assert that the property has been regularly entered on the tax books each year. The circuit court found in accordance with the latter's contention, and dismissed the suit, taxing the costs thereof against the Edmunds heirs.

The correctness of the lower court's ruling hinges upon the construction of the several conveyances of Lots Nos. 15 to 28, inclusive. Do they convey title to several divisions of the river bank to the north of Kanawha Avenue? If so, there has been no forfeiture; otherwise, the Edmunds heirs would, under the statute, have a right to redeem.

The deed to Lot No. 23, which is similar in character to those for Lots Nos. 15 to 28, inclusive, conveys "that certain lot or parcel of land more particularly designated as Lot No. 23 of the Addition known as the Gun Club Subdivision, situate in Loudon District of Kanawha County, West Virginia, between South Charleston and the City of Charleston and lying near the Kanawha River. And for a more particular description of said lots of land, reference is here made to the plat of said Gun Club Subdivision recorded in the Clerk's office of the County Court of Kanawha County, West Virginia, and reference is also made to a deed from Charleston Gun Club, a corporation, to said R. W. Edmunds, dated March 6, 1918, and duly recorded in said Clerk's Office, conveying a tract of land of which the above mentioned lot is a part." So, with the exception of the clause, "lying near the Kanawha River", we must turn to the plat to ascertain what was intended to be conveyed.

The plat indicates the length of the lines running from alleys to streets and the widths at the street lines. It also shows Blaine Street goes to the river. In the several rectangles south of Kanawha Avenue are inserted numbers, while those to the north are not numbered nor their exact dimensions indicated. It will be noted, however, that the lines dividing the strip to the north of Kanawha Avenue are in direct prolongation with those beginning at East Avenue. The question at once presents itself: Why is the strip divided to correspond with the natural prolongation of Lots Nos. 15 to 28, inclusive, and what does the owner intend to do with said parcels?

"Generally, it will not be presumed that a party granting land intends to retain a long narrow strip next to one of his lines." *Western M. & M. Co.* v. *Cannel Coal Co.*, 8 W. Va. 406. But, say counsel for the Edmunds, such a presumption does not arise where the narrow strip lies on the opposite side of a well defined street or roadway. The plat indicates that the river bank has been divided. If separate lots, why are they not numbered? They appear by scale to run from 45 to 60 feet in depth.

The intent of the original owner not being clear from the plat, which was made a part of the deed, we resort to parol evidence concerning the character and situation of the property to ascertain the intention of the parties. *Clayton* v. *County Court*, 58 W. Va. 253, 52 S. E. 103; *Uhl* v. *Railway Co.*, 51 W. Va. 106, 41 S. E. 340.

We find from the evidence that the bank breaks at some places about 30 feet within that part of the map marked Kanawha Avenue. The property generally is 45 feet above the pool stage of the river. In other words, the ground to the north of Kanawha Avenue would not ordinarily be salable for residence property.

There is a presumption of law that Edmunds had all of the Gun Club subdivision entered in his name upon the land books for taxable purposes. *State* v. *Bear Mountain Coal Co.*, 99 W. Va. 183, 128 S. E. 84. No assessments were made against him as to the above mentioned subdivision after 1919. And, in an endeavor to determine the meaning of the clause "lying near the Kanawha River", we find that all lots fronting on East Avenue carry a clause such as, "fronting on East Avenue," or having a "frontage running therewith". In the deed conveying Lot No. 28, and the irregular Lot No. 29 (the latter actually touching the river), the expression "lying near the Kanawha River" is used. Considering the surrounding circumstances, which of necessity must be resorted to to ascertain the intention of the parties, we are of opinion that the grantor intended to, and did, include the small parcels to the north of Kanawha Avenue as a part of the lot to the south of said Avenue. So believing, we affirm the decree of the circuit court.

*Affirmed.*

MAXWELL, JUDGE, (dissenting):

I cannot agree with the majority.

The decision is based on the premise that if the intent of a grantor does not clearly appear from his deed, resort may be had to extraneous matters to determine his intent. That is a sound principle of law, but if we can be guided by plain, unambiguous and simple language, then I say there is no reason to question the grantor's intent in this case, no occasion for interpretation, no room for supposition.

In each instance, the grantor conveyed, by number, a lot of land designated on a recorded plat. The plat shows the lot numbers and defines each lot by fixed and certain bounds. Nothing could be more exact. According to the plat the north boundary of the numbered lots is Kanawha Avenue. "If a deed be unambiguous, it speaks for itself and evidence of its meaning and intent will not be heard." *Coal Co.* v. *Adkins,* 101 W. Va. 211, 133 S. E. 330.

While it is true that generally a grantor will not be presumed to have intended to retain a long narrow strip next to one of his lines, I protest against carrying that principle to the extent of saying that a grantor will not be presumed to have left unconveyed a strip of land lying on the opposite side of a street from that which he conveyed by specific and exact bounds.

What boots it whether that portion of the plat portraying the grantor's land on the opposite side of Kanawha Avenue had cross-lines marked on it or not? The conveyance of each lot on the south side by number and plat reference is just as definite as though the metes and bounds were set out in each deed with the greatest of detail. When the plat shows the lots as bounded on the north by Kanawha Avenue, how can that boundary be any less definite than if the deeds had called specifically for Kanawha Avenue? That is certain which is capable of being made certain. A glance at the plat shows Kanawha Avenue definitely and certainly on the north front of the lots as numbered and as conveyed.

What difference does it make that the grantor permitted the land on the north side of Kanawha Avenue to become

forfeited for non-entry? That has happened before with other property owners and the state has permitted redemption, just as is sought here by the heirs of the grantor. The statute authorizing redemption in such circumstances presumably was intended for all. Why exclude these heirs from the benefit thereof merely on the surmise that the grantor intended that parcel to pass in sections with the lots on the opposite side of the Avenue?

In my judgment, the court's decision, by disregarding what seem to me the plain terms of the deed in question, takes from the heirs of R. W. Edmunds property which neither he nor they have sold or conveyed away, and vests it in a claimant that has no legal right to it. It is my opinion that the decision is in direct violation of fundamental principles which safeguard the right of private ownership of property. Therefore, I dissent.